THE STATE, THE CENTRAL RAILROAD COMPANY OF NEW
JERSEY, PROSECUTOR, v. THE MAYOR, &c., OF BAYONNE.

1. Under the charter of Bayonne, the common council may grant further
   time for filing the map and report of commissioners of assessment,
   after the statutory time for filing the same has expired, provided such
   grant be not unreasonably delayed.

2. A legal defect in the notices given of the filing of such report is not
   cured or waived by the appearance of a party according to the notice,
   who thereupon objects to its legality because of the defect.

3. Under said charter, a special commissioner of assessment may be ap-
   pointed in lieu of one of the general commissioners forthwith after
   the passage of the resolution referring the matter to the " commission-
   ers of assessment."

4. Under said charter, a railroad corporation, across whose railroad a
   highway is opened, is entitled to compensation for the expense of the
   removal of switches, the construction of culverts, the planking of the
   road bed and the erection of the statutory sign board, when such
   changes are rendered necessary in order to adapt the crossing and the
   adjoining property of the corporation to its uses as a railroad, in con-
   junction with the existence of the highway.

On *certiorari.*

Argued at February Term, 1889, before Justices SCUDDER,
DIXON and REED.

For the prosecutor, *E. A. S. Man*

For the defendant, *C. W. Fuller.*

The opinion of the court was delivered by

DIXON, J.    This *certiorari* brings up the proceedings taken
by the city of Bayonne for the opening of East Twenty-
second street between Avenue E and Avenue I.

The first objection urged against these proceedings is, that
the common council did not grant to the commissioners of
assessment further time for filing their report *before the expi-
ration* of the twenty days specifically allowed by the city
charter for filing the same.    But the charter (*Pamph. L.* 1872

*p.* 686, § 58,) does not require the council to exercise its power to grant further time, *within the twenty days;* and in the present case its exercise was certainly not unreasonably delayed. This objection cannot prevail.

The next objections are against the notices given of the filing of the preliminary map and report of the commissioners. These notices clearly failed to comply either with the charter (section 58, *ubi supra,*) or with the general law. *Rev., p.* 711. They did not contain a general description of the land taken, or the land assessed or of the streets or sections thereof included in the assessment; they merely referred to the map on file as showing each lot or parcel of land *bounded* by the improvement. It is true, that, in response to these notices, the prosecutor appeared, but that appearance was for the purpose of objecting to the proceedings on this ground, among others. Such an appearance is no waiver of the objection. *State* v. *Jersey City,* 2 *Dutcher* 444; *State* v. *Perth Amboy,* 5 *Id.* 259; *State* v. *Road Commissioners,* 12 *Vroom* 83. For this reason, the notice and all subsequent proceedings are illegal and must be set aside.

The next objection is, that a special commissioner of assessment was appointed for this improvement in lieu of a regular commissioner, who was interested therein, *after* the resolution referring the matter to the " commissioners of assessments" was passed. The appointment seems to have been made *immediately* after the passage of the resolution, at the same meeting of the council. This course of procedure was in accordance with the charter. *Section* 55, *ubi supra.* These two votes of the council should be regarded as parts of a single transaction, and were equivalent to a reference of the matter to the two disinterested regular commissioners and the special commissioner.

The other objections are aimed at the amount of the awards and assessments made by the commissioners for and against the prosecutor. The assessments are not shown to be exorbitant, but we think the awards are proved to be inadequate.

Section 58 of the charter requires the commissioners to " appraise the value of the interest of each known owner of real estate to be taken, and the damage to be done to such owner by taking the same, considering, in such appraisal, the condition in which each owner's parcel of real estate will be left after taking so much thereof as will be required for the improvement."

The projected street crosses the railroad of the prosecutor at a place where there are five lines of track and two switches, and a ditch for the discharge of water along each side of the railroad. According to the uncontradicted testimony, it would be impracticable for the prosecutor to use these switches in their present location and yet keep the street reasonably clear for travel; it will be necessary to move these switches further east, outside of the lines of the street. That removal will entail an expense of between \$2,000 and \$2,500. It will also be necessary to construct culverts in place of the ditches, in order to preserve the water way, and to lay and maintain planking between the tracks at the crossing, so as to save the rails from injury and to secure the shortest possible interference with the passage of trains by vehicles using the street. This will involve an outlay of several hundred dollars more. The prosecutor will also be obliged to put up the statutory sign board. These consequences will flow directly and inevitably from the taking of such an interest in the property of the prosecutor as will be required for the proposed highway.

When a highway is laid out across a railroad, the owner of the railroad is not, as the owner of land ordinarily is, excluded from the beneficial use of the property; and hence, the value of the land is not a legitimate element of compensation. But, in such cases, the right of the owner to use the railroad becomes narrowed by the conditions essential to the existence and use of the highway, whether those conditions are imposed upon the owner by positive law or by the reasonable exigencies of the situation. For this diminution in the owner's right, the charter of the city expressly requires compensation to be made to the owner, as a preliminary step

in laying out a highway. "A railroad corporation, across whose road another railroad or a highway is laid out, has the like right as all individuals or bodies politic and corporate, owning lands or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures upon the land, or changes in its surface absolutely required by law, or, in fact, necessary to be made by the corporation injured, in order to accommodate its own land to the new condition." *Massachusetts Central R. R. Co.* v. *Boston, C. and F. R. R. Co.*, 121 *Mass.* 124.

According to these views, it seems plain that the removal of the switches, the planking of the road bed, the construction of culverts and the erection of the sign board, are necessary items of expenditure, against which the prosecutor should be indemnified. The award of the commissioners, amounting to about $1,850, is insufficient.

The report of the commissioners should therefore be likewise set aside.

The position taken by the city counsel, that the writ of *certiorari* was allowed after the time limited by section 80 of the city charter for such allowance, and, therefore, should be dismissed, is untenable. That section permits the writ of *certiorari* to be granted and allowed to stay proceedings at any time before the filing with the city clerk of a copy of the resolution for the payment of awards, in case awards are to be paid. These proceedings require awards to be paid, and the *certiorari* was served before any resolution for their payment was passed.

Let the commissioners' report and all subsequent proceedings be set aside, with costs.