THE MORRIS AND ESSEX RAILROAD COMPANY AND THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, DEFENDANTS IN ERROR, v. THE CITY OF ORANGE, PLAINTIFF IN ERROR.

Argued December 5, 1898—Decided June 26, 1899.

1. The city charter provided for compensation under the designation of damages for lands taken for the opening of streets. A street was laid out across the lands of the railroad company, crossing its tracks at grade. *Held*—

1. That a railroad company on the laying of a highway over its tracks is entitled to compensation for the use of the *locus in quo* for a highway crossing; that such use does not deprive the company of the use of the premises for the passage of its trains, and that when the crossing is at grade the injury to the company in that use of its property is so slight as to justify nominal damages.

2. That for an injury occasioned by necessary structural changes, such as the removal of buildings or changes in the tracks, compensation should be made which would be adequate under the circumstances.

3. That for expenses incident to the erection and maintenance of gates, signboards, cattle-guards, and the like, including the expenses of a flagman, the company is not entitled to an allowance; such ex-

penditures, being required either for the protection of the company in running its trains or of the public using the street at such crossings, are expenses incident to a compliance with police regulations, and, therefore, do not entitle the company to an allowance for them.

4. That planking between the rails and maintaining it for a crossing is not a structural change for which compensation should be allowed.

5. That in proceedings under the city charter, providing for the assessment of damages and benefits incident to the laying out of a street across the tracks of a railroad company, the company should not have been assessed for benefits.

2. A judgment of the Supreme Court setting aside the award of commissioners making an assessment of damages for the opening of a street is a final judgment on which a writ of error will lie, although the court in setting aside the assessment directed that a new assessment should be made on different principles. *Paterson and Newark Railroad Co.* v. *Newark,* 32 *Vroom* 80, overruled.

On error to the Supreme Court.

For the plaintiff in error, *Thomas A. Davis, Colie, Swayze & Titsworth* and *Frederick T. Johnson.*

For the defendants in error, *McGee, Bedle & Bedle* and *Cortlandt Parker, Jr.*

The opinion of the court was delivered by

DEPUE, J. This writ of error is sued out by the city of Orange to review the judgment of the Supreme Court in the case of State, Morris and Essex Railroad Co. and the Delaware, Lackawanna and Western Railroad Co., pros., v. Mayor and Common Council of the City of Orange, on *certiorari,* setting aside an assessment of damages and for benefits in laying out and opening Hickory street from South Main street to Parrow street.

By an ordinance adopted January 4th, 1892, the city council laid out Hickory street within termini named, crossing the railroad of the prosecutors.

By section 30 of the charter of Orange the common council was required from time to time to appoint five commissioners of assessment, to be known by the name of the board of

assessments, whose duty it should be to assess damages in favor of any owner or owners of any lands or real estate that may be taken for or may be damaged by any improvement, such as the laying out or opening of any street, highway, &c., and also to assess benefits. Commissioners were appointed to assess the damages for the opening of this street. At a hearing before the commissioners a representative of the company presented a specification in writing of the damages, both immediate and prospective, claimed by the company as occasioned by the crossing of the street over their track, amounting to $18,270. Included in this specification was a claim for the value of land proposed to be taken, $490; cost of grading and constructing planking and other necessaries of the crossing, $120; the annual cost of maintaining the crossing, $40 per annum; cost of reconstructing switch to conform to street grade, $250; loss on the value of the switch by reason of the street, $300; cost of culvert pipe and mason work on culvert, $360; cost of erecting two gates on either side of the street, $350; cost of maintaining the gates themselves, $50; annual cost of two flagmen, $730. The capitalization of the several sums mentioned amounted to $18,270. The commissioners rejected this claim and made an assessment to the company of the sum of one dollar for damages. On the return of the report to the common council the committee on assessment confirmed the assessment of damages reported by the commissioners, and made an assessment against the company for benefits to the amount of one dollar, and the report of the committee was adopted by the common council. This proceeding of the municipal body was brought under review in the Supreme Court by *certiorari*.

In *Paterson and Newark Railroad Co.* v. *Newark*, 32 *Vroom* 80, which was a case in its facts and circumstances identical with this case, the Supreme Court held that " the laying out of a highway across a railroad is a taking of the company's property for public use, and entitles it to compensation therefor; and compensation for such taking includes the making good to the company the money expended

by it in erecting, maintaining and operating gates at the cross-
ing, provided such gates are necessary for the proper protec-
tion of the public, and for the safe operation of the company's
railroad." On the hearing of the writ of *certiorari* in this
case the Supreme Court set aside the assessment to the prose-
cutors, and appointed commissioners to act as appraisers, and
ordered that a new assessment in favor of the prosecutors
should be made in accordance with the principles laid down
in the case above cited.

This writ of error brings up for review the judgment of
the Supreme Court, and involves a consideration of the reasons
which controlled the court in its judgment, as well as the legal
principles which should control in setting aside or sustaining
the proceeding under review.

The company has title to the *locus in quo* by a deed from
William Pierson, Jr., and wife, February 23d, 1836, grant-
ing the tract of land described to the Morris and Essex Rail-
road Company, and to their successors and assigns forever,
with the right, liberty and privilege of entering upon the
said tract, and to take possession of, hold, have, use, occupy
and excavate the same, and erect embankments and bridges
and other works necessary to lay rails, and to do all things
which should be necessary or suitable to the completion and
repair of the company's road or roads; to have and to hold
unto the said company, and to its successors and assigns for-
ever, for the purposes above mentioned and for all other
purposes mentioned in said act of incorporation. By this
conveyance the company took a fee-simple determinable—a
qualified fee for the purposes mentioned in the *habendum*.
*Pipe Line Co.* v. *Delaware, Lackawanna and Western Rail-
road Co.*, 33 *Vroom* 254.

It is conceded that compensation should be made to the
railroad company for the opening of the street across its
track. The city charter (*Pamph. L.* 1869, *p.* 213) provides
in section 64 for compensation under the designation of
damages, and in section 65 makes it the duty of the commis-
sioners to assess damages with due regard to the value of the

land or real estate taken or damaged by said improvement. In giving effect to the city charter, the primary inquiry in every case is whether lands have been taken, and what damages are legally the result of the improvement and assessable as damages for the laying out and opening of the street. The street in this case was laid across the company's railroad at grade.

The opening of the street did not deprive the railroad of the use of its track for railroad purposes. Under the condemnation of a right to lay streets across a railroad track, or to lay the track of one railroad across another, nothing is acquired but a right of way; the place of crossing will remain in the common use of the parties for the exercise of their respective franchises. *New Jersey Southern Railroad Co.* v. *Long Branch Commissioners*, 10 *Vroom* 28; *National Docks, &c., Co.* v. *United Cos.*, 24 *Vroom* 217. As between two railroad companies having the common use of a place of crossing, the right of the two companies in the user is equal; but with respect to user as between the public using the highway and the railroad company using its tracks for the passage of trains, the right of the railroad company is in law and in fact superior. It was accordingly held in Central Railroad Co. v. Bayonne, that when a highway is laid out across a railroad the owner of the railroad is not, as the owner of land ordinarily is, excluded from the beneficial use of his property, and hence the value of the land is not a legitimate element of compensation. 22 *Vroom* 428. The principle that a company over whose track a public road is constructed is not excluded from the beneficial use of its railroad, and is not entitled to compensation as for lands taken, is well settled. This case, therefore, resolves itself purely into an examination of the damages to be compensated for and the rule for their admeasurement.

The company had constructed a switch for the storing of cars and convenience in conducting its business, which extended over this street to the next street over the railroad. This switch was lower than the company's main tracks, and

with the street across the main track and the switch the latter must be raised and graded for convenient use. The readjustment of this switch to conform to the grade of the street and to the company's main track would occasion expense to the company. In *Central Railroad Co.* v. *Bayonne, supra,* an injury of this character was held to be such as the company was entitled to be compensated for. In that view we concur.

The main controversy is with respect to the company's claim for the cost of erecting and maintaining gates and the expense of flagmen to manage the gates. The company relies upon *Paterson and Newark Railroad Co.* v. *Newark, supra,* to sustain this claim. In that case it was contended by the city of Newark that the cost of constructing, maintaining and operating safety gates in virtue of an ordinance of the city was a police regulation pure and simple, and that no person could recover damages on account of being compelled to comply with the police regulations of the municipality. But the Supreme Court discredited that contention as based upon a misapprehension of fact, and held that the railroad company was entitled to compensation in that respect for the reason that the necessity for gates at a highway crossing over a railroad did not at all depend upon the existence or the non-existence of an ordinance requiring their erection, for unless the proper protection of the public makes them necessary such an ordinance would be unreasonable and void; and, on the other hand, if the safety of the public and the safe operation of the railroad required gates at such crossing it would be necessary for the company for its own protection to erect them, even if no ordinance to that effect existed, and that the question whether or not the company was entitled to compensation for such outlay depended on whether it was rendered necessary by the laying out of the street across the company's railroad.

The charter of the city of Orange gives the municipality power to pass ordinances to regulate the speed of locomotive engines upon any railroad in the town, and to compel any railroad to station and maintain flagmen wherever such rail-

road may cross any of its streets or highways, and a city ordinance passed under the charter requires flagmen to be stationed at such crossings as the common council might designate by resolution, and there is no ordinance of the city requiring gates at railroad crossings or resolution of the common council requiring a flagman to be stationed at this crossing; but these circumstances seem to be immaterial. Gates have been erected by the company at this crossing, located at a conference between the chairman of the street committee and a representative of the company, probably in the place of flagmen, for the greater safety of the railroad company in running its trains and of the public in the use of the street. The necessity for some protection of this sort at that point is conceded, and the concurrence of city officials and representatives of the railroad company in locating the gates indicates that in the opinion of all parties the proper mode of affording this protection was by means of gates. Hence, according to the decision of the Supreme Court in *Paterson and Newark Railroad Co. v. Newark, supra,* the city should be required to compensate the company for the whole expense of these gates.

The erroneous feature in the decision just referred to consists in discarding the consideration that the duty of erecting and maintaining gates at the crossing of streets over a railroad, whether for the protection of the public using the street or of the railroad company in operating its road, is referred to the police powers of the government. This principle is stated by Mr. Justice Scudder in Delaware, Lackawanna and Western Railroad Co. *v.* East Orange. In that case the question involved was the right of East Orange to pass an ordinance requiring the prosecutors to station and maintain flagmen at the crossings of streets which had been opened after the railroad was built. In delivering the opinion of the court sustaining the ordinance Mr. Justice Scudder said : "The public have the right to lay roads over the railway tracks and use them in crossing as part of such highways. In such use all persons who pass over them, properly exercising the right to

travel on the public highways, will be protected.   \*   \*   \*
After the company have constructed their road, therefore,
new obligations may be imposed upon them by new con-
ditions arising after the road has been built, which do not
relate to the construction but to the common use of highways
by the railroad and by the public.   \*   \*   \*   It is clear that
when the privilege is given to a railroad company to cross
public highways then existing, or that may afterwards be
laid, it is not exempted from the common law duty of taking
reasonable care to enable the public to use the highways with
safety; and where there is such duty a corresponding right
exists in the legislature to enforce its performance by appro-
priate legislation.   \*   \*   \*   All these arrangements, by which
burdens are put upon the company of a character different
from any others in the charter, are necessary for the protec-
tion of the passengers and freight conveyed on the road as
well as for the safety of the public.   \*   \*   \*   Protection to
the public is protection also to the corporation and to the
persons and property for which it is responsible.   It is evi-
dent that the legislature may thus require additional precau-
tions of railway companies, involving expense to them, to
prevent injuries to persons and property within and without
their cars while exercising their franchises under their charter.
Such requirements are in the nature of police regulations and
do not conflict with the constitution because they take away
no vested rights, nor do they interfere with or impair the
powers conferred on the company by the act of incorporation.
The essential franchises of the corporation are not disturbed."
12 *Vroom* 127.

A regulation adopted for public safety under the police
power of the state is not a taking or damaging of private
property without just compensation, although conformity to
such regulations involve expense.   *Chicago and Northwestern
Railroad Co.* v. *Chicago*, 140 *Ill.* 309.   Thus it was held in
Mugler *v.* Kansas that legislation, in the exercise of the police
powers of the state, to prohibit the manufacture and sale of
spirituous liquors, might be enforced against persons who at

the time happened to own property whose chief value con-
sisted in its fitness for such manufacturing purposes without
compensating them for the diminution in value resulting from
such prohibitory enactments.    Such regulations are not an
appropriation of property for the public benefit in the sense
in which a taking of property by the exercise of the state's
power of eminent domain is a taking for which compensation
is required.    123 *U. S.* 623.    Neither a natural person nor a
corporation can claim damages on account of being compelled
to render obedience to a police regulation designed to secure
the common welfare.    *Chicago and Alton Railroad Co.* v.
*Joliet,* 105 *Ill.* 388.    The subject is practically illustrated in
acts of the legislature prescribing regulations for conduct-
ing the business of railroad companies, such as requiring
conductors and brakemen to wear badges, the company to
issue checks for baggage in a particular manner, to erect sign-
boards at street crossings, requiring passenger cars not to have
bars across the windows, to provide signals for the approach
of trains to road crossings, the redemption of unused tickets
and the like.    By an act passed April 1st, 1895, the govern-
ing bodies of towns, townships, boroughs and villages were
empowered to pass ordinances requiring railroad companies
to protect railroad grade crossings or places where the tracks
cross a public street or highway at grade by the erection and
maintenance of gates or placing and maintaining flagmen at
such crossings for such time or hours as the said governing
body shall deem reasonable, &c.    *Gen. Stat., p.* 2718.    This
act makes no provision for ascertaining and making com-
pensation to the railroad companies for the expense incurred
in complying with these regulations.    If the contention be
yielded to, that a railroad company is on constitutional prin-
ciples entitled to compensation for the opening of a street
across its tracks whereby for the safety of its trains or of
persons using the highway gates are necessary, the statute
above referred to is inefficacious.    The act of 1898 (*Pamph.
L.* 1898, *p.* 110), which gives the Chancellor power to say
what part of such outlays and expenses should be borne by

the municipality, would be equally obnoxious to the constitutional interdict. Every municipal body endowed with the power to pass ordinances for the regulation of municipal affairs adopts ordinances requiring duties from inhabitants, such as removing snow from the sidewalks, the protection of areas, the cleansing of vaults and the like, all of which affect property and involve expenditure. Acts of the legislature, such as those referred to, and city ordinances are justified under police powers, and it has never been supposed that they constitute a taking of property under the right of eminent domain, for which compensation must be made.

The decisions on this subject are conflicting in some particulars. In *Old Colony and Fall River Railroad Co.* v. *Plymouth*, 14 *Gray* 155, decided in 1859, the highway was laid across the track of a railroad after the railroad had been built and was in operation. The company claimed damages for the taking of their land; for increased liability to damages from accidents from collisions and otherwise, by reason of laying out the highway at grade over their track; the expense of making and maintaining signboards at the crossing; for making and maintaining cattle-guards; for the expense of planking and keeping the planks in repair between the rails; for increase of expense in ringing the bell as required by law, and for liability of being compelled by county commissioners to build a bridge for the highway over the railroad track. The court allowed damages for *taking the land, subject, however, to its use for a railroad,* the expense of erecting and maintaining signs required by law at the crossing, making and maintaining cattle-guards and for the expense of flooring the crossing and keeping the planks in repair, and disallowed the other elements of damages claimed. This case was made the basis of decision *In re Morris and Essex Railroad Co.*, 9 *N. J. L. J.* 75. The counsel of the company justly says that the judge who decided the latter case was not satisfied with the logic of the Massachusetts case, but followed it as a precedent. It will be observed that in the Massachusetts case it was held that in assessing the damages for the taking of the

company's land they were to be assessed on the basis that the land was taken "subject to its use for a railroad." On what principle such damages were to be ascertained was not indicated. Hence, In re Morris and Essex Railroad Co., as reported in the *Law Journal*, in applying the Massachusetts rule, it was held that the damages for the use of the premises for the additional servitude upon it should be nominal, or at least very small. Compensation for the expense of erecting gates and maintaining flagmen was excluded, for the reason that all regulations with regard to the care necessary to cross a public highway in running a railroad train were police regulations and were incident to the transaction of the company's business, and not assessable as damages for the crossing; but allowance was made for erecting cattle-guards and putting down and maintaining planks between the rails.

It will also be observed that in the Old Colony case no allusion was made to the distinction between taking property under the power of eminent domain and damages resulting from the exercise of police powers, which are *damnum absque injuria.* The case was explained in Boston and Albany Railroad Co. *v.* Cambridge, in the same court. Allowance was there made for the expense of making and maintaining in repair the planking, paving, cattle-guards, fences, signboards, posts, gates and gate-houses, but the cost of operating the gates was excluded from the verdict as chargeable to the ordinary operating expenses of the railroad. But the decision in the latter case was rested upon a statute which enacted that when a way is laid across an existing railroad "all expenses of and incident to constructing and maintaining the way at such crossing shall be borne by the county, city or town whose duty it is to build and maintain such way." *Stat.* 1857, *ch.* 287. The learned judge who delivered the opinion of the court justified the damages permitted in that case on the ground that "it is only by allowing the expense of erecting and maintaining the appliances and structures necessary and required at the new crossing to be taken into account in the assessment of damages done to the railroad company by the

laying out of, the way that the statute, which says that those expenses are to be borne by the county, city or town, is given practical effect." 159 *Mass.* 283, 290.

The New York courts have decided that a statute which authorized the construction of highways across railroad tracks without compensation `did not violate the constitutional provisions against taking private property for public use, or impair the obligation of contracts. *Albany Northern Railroad Co.* v. *Brownell,* 24 *N. Y.* 345; *Boston and Albany Railroad Co.* v. *Village of Greenbush,* 52 *Id.* 510; *Delaware and Hudson Canal Co.* v. *Whitehall,* 90 *Id.* 21. In the Connecticut courts, an act which authorized railroad commissioners, who were public officers, to order a railroad to remove grade crossings, and when the company failed to do so to determine and apportion the expense of such changes to be paid by the company, was held not to be unconstitutional. In the latest decision on this subject the commissioners ordered a certain crossing to be removed, so that the highway, instead of crossing the tracks at grade, would be carried under the tracks, and for that purpose the location of the crossing should be changed by the removal of tracks. The commissioners further ordered that all said changes, alterations and removals should be made and done by the railroad company, and the expense thereof, including the damage to any person whose lands were taken, and the special damages which the owner of any land adjoining the public highway should sustain by reason of any change in the grade of such highway, should be paid by the railroad company. From that order the company appealed on the ground that the statute was unconstitutional. That contention was overruled. 62 *Conn.* 252; 26 *Atl. Rep.* 122. This decision was affirmed in the Supreme Court of the United States. *New York and New England Railroad* v. *Bristol,* 151 *U. S.* 556, 566, 567.

In the New York and Connecticut courts the decisions were placed on the ground that the charters of the respective companies were subject to alteration or repeal, but in examining the opinion of the Connecticut court and of the Supreme Court of the United States in the latter case, stress is laid on

the fact that such regulations were a proper exercise of the police powers of the state. In *Boston and Maine Railroad Co.* v. *County Commissioners*, 79 *Me.* 386; *S. C.*, 10 *Atl. Rep.* 113, an act requiring the expense of building and maintaining so much of the townway or highway as was within the limits of the highway where such way crossed the track at grade, should be borne by the railroad company, was held to be constitutional. This decision was made against a company whose charter provided that it should not be altered, amended or repealed. The power of the legislature to impose such burdens for general safety under the police power was declared to be fundamental, and that the act did not impair any contract in the company's charter. Whether the corporation has an irrepealable contract in its charter or not is immaterial. Police powers are inherent in the government, and the legitimate exercise of legislative power in securing public-safety does not impair the obligation of contracts nor deprive anyone of property without due process of law. As was said by Chief Justice Fuller in New York and New England Railroad Co. *v.* Bristol, "the governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury." 151 *U. S.* 556, 567. In New Orleans Gas Co. *v.* Louisiana Light Co. it was held that "in granting the exclusive franchise to supply gas to a municipality and its inhabitants, a state legislature does not part with the police power and duty of protecting the public health, the public morals and the public safety, as one or the other may be affected by the exercise of that franchise by the grantee." In delivering the opinion of the court, Mr. Justice Harlan used this language: "The constitutional prohibition upon state laws impairing the obligation of contracts does not restrict the power of the state to protect the public health, the public morals or the public safety, as the one or the other may be involved in the execution of such contracts. Rights and privileges arising from

contracts with a state are subject to regulations for the protection of the public health, the public morals and the public safety, in the same sense and to the same extent as are all contracts and all property, whether owned by natural persons or corporations." 115 *U. S.* 650, 672.

The decisions of the Illinois courts on this subject are entitled to great consideration, for the reason that the principles adjudged in those decisions have received the support of the Supreme Court of the United States. The constitution of Illinois contains the provision that private property shall not be taken or damaged for public use without just compensation. By a statute of the state approved April 10th, 1872, relating to the incorporation of cities and villages, it was provided that the city council should have power, by condemnation or otherwise, to extend any street, alley or highway over or across, or to construct any sewer under or through any railroad track, right of way or land of any railroad company; but where no compensation is made to such railroad company, the city shall restore such railroad track, right of way or land to its fo mer state, or in a sufficient manner not to have impaired its usefulness. The ninth article provided that when the municipal authorities passed an ordinance authorizing any local improvement which would require that private property be taken or damaged for public use, the city or village should file in its name a petition to some court of record of the county praying " that the just compensation to be made for private property to be taken or damaged " for the improvement or purpose specified in the ordinance be ascertained by a jury. In Chicago and Northwestern Railroad Co. *v.* Chicago, a city ordinance laid out the extension of a street across the tracks of the railroad company. On an application to the court for the assessment of damages the company claimed allowance for the following items of expense : Grading, planking, gate, power-house, wages of gate-tender, repairs to the planking, repairs to the gate. The Circuit Court rejected the company's claim for substantial damages and gave judgment for a nominal sum. On appeal to the Supreme Court the judg-

ment of the Circuit Court was sustained. 140 *Ill.* 309. In a later case in the same court the city by an ordinance authorized the opening and widening of Rockwell street, which crossed the railroad track of the Chicago, Burlington and Quincy Railroad Company. A petition was filed in the Circuit Court praying that just compensation for property taken or damaged should be ascertained by a jury. The railroad company was admitted as a defendant, and the jury in its verdict fixed one dollar as just compensation to the railroad company in respect to the right of way described in the city's petition as necessary to be used for the purposes of the proposed street. Judgment was entered on this finding in the Circuit Court, and on appeal the judgment was sustained. *Chicago, Burlington and Quincy Railroad Co.* v. *Chicago*, 149 *Ill.* 495. The judgment in this case was removed by writ of error to the Supreme Court of the United States, and was there affirmed. 166 *U. S.* 226. The jurisdiction of the federal court to review the decision of the state court on this subject was justified in virtue of the fourteenth amendment to the constitution of the United States, the court holding that a judgment of a state court, even if authorized by statute, whereby private property is taken for public use, without compensation made or secured to the owner, is wanting in the due process of law required in that amendment. The jurisdiction of the federal court to retry the facts found by the jury was disclaimed, and the power of the court was asserted to inquire whether the trial court prescribed any rule of law for the guidance of the jury in disregard of the company's right to just compensation. The instructions of the trial court given and refused and put on record for review in the federal court comprise all the questions that arise in this case. The railroad company claimed that by reason of the opening of the street it was entitled to recover a sum equal to the difference between the value of the land in question as land, without any restriction on the right to use it for any lawful purpose, and the value of the land when burdened with the right of the public to use it for a street crossing.

It was held by the court that inasmuch as by the law of Illinois the laying of a street across railroad tracks did not condemn the land of the railroad company, nor even prevent the use of the tracks or right of way, it would follow that the jury in ascertaining the amount of compensation could not take as a basis of calculation the market value of the land as land—that the land as such was not taken; that the railroad company was not prevented from using it, and that its use for all the purposes for which it was held by the railroad company was interfered with only so far as its exclusive enjoyment for the purpose of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street, and that the company was to be compensated for the diminution in its right to use its tracks caused by the existence and use of the street. Another error assigned was the refusal of the court to allow the company to prove that, in order that the railroad might be properly and safely operated, it would be necessary to construct gates and a tower for operating them, plank the crossing, fill between the rails, put in an extra rail, and to incur an annual expense of depreciations, maintenance, employment of gatemen, &c.—not under a claim to recover specifically on account of such expenditures, but for the purpose of showing the compensation due to the company. On this subject the court said: "The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people was involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise.

Property thus damaged or injured is not, within the meaning of the constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people." After citing an earlier case in Illinois, sustaining a statute which required railroad companies to construct and maintain the highway and street crossings and approaches within their respective rights of way, as nothing more than a police regulation, the following extract from the opinion in that case was quoted : " The items of expense for which appellant claims compensation are such only as are involved in its compliance with a police regulation of the statute. It is well settled that ' neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare.' * * * Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or of private property affected with a public interest." The learned judge then continued : " We concur in these views. The expenses that will be incurred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated—if all that should be required—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state. What was obtained, and all that was obtained, by the condemnation proceedings for the public was the right to open a street across land within the crossing that was used, and was always likely to be used, for railroad tracks. While the city was bound to make compensation for that which was actually taken, it can-

not be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people." 166 *U. S.* 226, 250, 251, 252, 255, 256.

In Chicago, Milwaukee and St. Paul Railway Co. *v.* Milwaukee, it was held that upon the crossing of a street over a railroad the railroad company was entitled to compensation for the use of its track for the crossing of a highway, and for structural changes, including planking the track and maintaining the same, but not for the expense of erecting and operating gates; that the latter were not structural changes in the track and not a necessary part of the crossing, and that the company was not entitled to compensation for the expenses incident to a compliance with the police powers. In that case a special verdict was found, assessing the company's right of way taken by the city subject to its use for railway purposes at one dollar. Allowance was also made for the expense of planking the crossing and maintaining the planking, for the maintenance of a warning-post and crossing-sign, the expense of constructing and maintaining cattle-guards and of erecting, maintaining and operating gates at the crossing. On appeal the court disallowed all these items, except for the right of way and structural changes, such as planking the track and maintaining the same. This decision was placed on the ground that the excluded items of expense arose from the exercise of police regulations, and, therefore, were not violations of the constitution as impairing the obligation of contracts or as the deprivation of property without due process of law. The legislative authority under the police powers, the court held, extended to all matters necessary to a safe crossing of a railway track by a highway, without regard to whether exercised before or after the construction of the railroad or before or after the construction of the highway, or whether the highway existed at the time of the construction of the railroad or was thereafter constructed across it. 72 *N. W. Rep.* 1118. In St. Paul, Minneapolis and Manitoba Railroad Co. *v.* District Court of Hennepin County it was held that the company was entitled to compensation for plank-

ing the roadway between the railroad tracks and the main-
tenance of planking, but not for cattle-guards and signboards.
The latter items were excluded for the reason that they were
mere matters of police regulation which the state had power
to impose, and that such regulations of the use of property
did not constitute a taking of property or its destruction, and
were such as everyone is required to submit to without com-
pensation. 42 *Minn.* 247.

As already observed, the decisions on this subject are not
harmonious, but we think upon principle and by the clear
weight of authority these propositions may be regarded as
established: *First.* That a railroad company on the laying
of a highway over its tracks is entitled to compensation for
the use of the *locus in quo* for a highway crossing; that such
use does not deprive the company of the use of the premises
for the passage of its trains, and that when the crossing is at
grade, the injury to the company in that use of its property is
so slight as to justify nominal damages. *Second.* That for an
injury occasioned by necessary structural changes, such as the
removal of buildings or changes in the tracks, compensation
should be made which would be adequate under the circum-
stances. *Third.* That for the expenses incident to the erection
and maintenance of gates, signboards, cattle-guards and the
like, including the salary of a flagman, the company is not
entitled to an allowance. Such expenditures, being required
either for the protection of the company in running its trains
or of the public using the street at such crossings, are expenses
incident to a compliance with police regulations, and, there-
fore, do not entitle the company to an allowance for them.

In some of the cases the cost of planking between the rails
and the expenses of maintaining it have been allowed as for
structural changes in the company's property to make it con-
form to the new use. In the greater number of cases com-
pensation of this character is disallowed, on the ground that
such an adaptation of the company's property to the passage
of the public highway is not a structural change, but a pro-
vision for the safe passage of the public using the highway

over the company's tracks, for the benefit of the public on the one hand and the protection of the tracks on the other hand. It is true that planking between the rails is made necessary by reason of the laying of the public road over the railroad, just as signal-posts, gates and flagmen may be required for the safety of those using the highway as well as in running the company's trains. The principle that would exclude compensation for the latter applies with equal force to the former. We think the planking between the rails is not a structural change and that compensation for such an outlay should be disallowed.

The report which was brought under review in the Supreme Court assessed the company for benefits. We think in principle this was erroneous. The sum assessed is small, but the principle on which assessments for benefits for the opening of streets are made does not justify any assessment against the company for benefits arising from the opening of this street. Nor was any consideration given to an allowance for the expenses of changes in the switch which seem to have been made necessary by the opening of the street. Such an allowance would be proper as expenses incident to structural changes to conform the company's tracks to the passage of the street over its railroad. The award of damages brought up was erroneous in the respects above indicated, and the decision of the Supreme Court setting it aside was therefore correct; but the directions given by the Supreme Court in appointing new commissioners, with respect to the mode in which the assessment by them should be made, were erroneous and are disapproved.

The judgment of the Supreme Court setting aside the award of the commissioners is a final judgment, from which a writ of error will lie, although the Supreme Court in setting aside the award of the commissioners appointed new commissioners to the end that another award might be made. The practice so firmly established in this state, of allowing a writ of error to review a judgment of the inferior court setting aside a final judgment and directing a new trial, is in

principle applicable to the situation of this case. In Lee *v.* Heath a judgment of the Supreme Court reversing a judgment of the Circuit, and remitting the record to the court below for further proceedings according to law, was held to be a final judgment reviewable on error, although the judgment of the Supreme Court contemplated a new trial at the Circuit. In pronouncing the judgment of the court, Mr. Justice Dixon in that case said : "This practice is justified by the fact that the substantial matter for consideration is the legality of the original judgment, which unquestionably was a final judgment, and if legal ought to be restored ; the writ of error, therefore, should not be dismissed, and, consequently, we must examine the merits of the case." 32 *Vroom* 251. This court thereupon reviewed the grounds on which the judgment of the Supreme Court was rested, and on such a revision the judgment was affirmed. It is equally true that the substantial matter for consideration in this case is the legality of the original award of commissioners, which was a finality unless set aside by some judicial action, and if legal ought to be restored. It is also true that the judgment of the Supreme Court setting aside the proceedings of the common council was a finality. This court in reviewing the judgment of the Supreme Court, in compliance with the decision in Lee *v.* Heath, must examine and consider the reasoning on which the Supreme Court rested its judgment, and in pronouncing its judgment upon the action of the commissioners is required to express the reasons on which the judgment of this court shall be founded.

The judgment of the Supreme Court should be affirmed and the record remitted, to be proceeded with according to law.

MAGIE, C. J. The judgment of the Supreme Court under review vacated an insufficient award or assessment of damages to the railroad company for the laying out of a street across its track. The judgment was warranted by the evidence and I shall vote to affirm it.

But the instructions contained in the order of the Supreme

Court appointing commissioners to make a new assessment, are not in my judgment proper to be considered on this writ of error. Whether the Supreme Court had authority to give such instructions or whether the instructions given are correct or not, are questions which will become reviewable after the new assessment is made and not before.

This view would lead me to abstain from any expression of opinion upon that subject, but for the fact that a majority of the court have treated the questions above indicated as now before us for judgment. This compels me to say that I cannot concur in the opinion supported by the majority. The instructions required the commissioners to make the new assessment on the principles laid down in *Paterson and Newark Railroad Co.* v. *Newark*, 32 *Vroom* 80. If the court had power to direct the commissioners in the performance of their duty, this direction was, in my judgment, correct. I entirely agree with the reasoning and conclusion of Mr. Justice Gummere in his opinion in that case.

DIXON, J. I base my substantial assent to the conclusions of the court in this case on the provisions of the charter of the Morris and Essex Railroad Company (*Pamph. L.* 1835, *p.* 25), of which the ninth section enacts "that it shall be the duty of the said company to construct and keep in repair good and sufficient bridges or passages over or under the said railroad or roads, where any public or other road shall cross the same, so that the passage of carriages, horses and cattle on the said road shall not be impeded thereby, and also, where the said road shall intersect any farm or lands of any individual, to provide and keep in repair suitable wagon-ways over or under said road, so that he may pass the same."

I understand this provision to include highways laid across the railroad at any time.

In *Morris Canal Co.* v. *State*, 4 *Zab.* 62, the Supreme Court interpreted a somewhat similar provision in the canal company's charter as embracing only highways existing when the canal was constructed. But this interpretation was reluctantly

accepted, being forced by the inseparable collocation of public roads and farms, the language of . the charter being " that when the said canal shall cross any public road or farm, it shall be the duty," &c.   Of that clause, Chief Justice Whelpley said : " It never could have been the design of the legislature to require that, in all future time, whenever a landholder should choose to unite two tracts of land lying on opposite sides of the canal into one farm, the company should build and maintain a bridge for his accommodation.   If the language of the act will not bear this construction in regard to farms, neither can it in regard to highways.   The same construction must, of necessity, be adopted in regard to both."

But in the present charter there is no such union between the expression of the public duty and that of the private duty.   On the contrary, there is a marked diversity.   Thus the private duty arises " *where the said railroad shall intersect any farm,*" fairly pointing to the original construction of the railroad.   But the public duty arises " *where any public or other road shall cross the*" *railroad;* words which, by the same rule of interpretation, point to the construction of the highway.   I do not mean to say that the duty is confined to highways laid out after the railroad was built—the reason of the thing forbids so narrow a view ; I only wish to suggest that the words themselves point more naturally to subsequent than to pre-existing highways.   Under the guidance of a public policy, which the legislature cannot be supposed to have ignored, the duty enjoined should be deemed to extend to highways of both classes.

I therefore think that, by accepting its charter, the company has become subject to the opening of highways across its railroad and to the duty of making and keeping in repair safe crossings therefor without receiving from the public any compensation other than the grants contained in the charter, and that if this were merely a crossing of the railroad, with the ordinary incidents of such a crossing, the report of the commissioners, which awarded to the company only nominal damages, should have been confirmed.

But the case shows that, besides the usual incidents attendant upon the mere crossing of the railroad by a highway, a switch track or siding would be necessarily shortened and thus substantially lessened in usefulness. To this extraordinary damage I think the company could not be subjected without compensation, and therefore the judgment of the Supreme Court, setting aside the award, was lawful and should be affirmed.

Mr. Justice Ludlow concurs in this opinion.

GARRISON, J. I vote to affirm so much of the judgment of the Supreme Court as was a finality in that court. The instructions given by that court for the guidance of the commissioners it had appointed cannot, in my opinion, assume a definite, still less a final, form until certain questions of fact have been passed upon not only by the commission, but also by the Supreme Court. Upon this inchoate state of affairs I express no opinion, and hence do not concur in any of the opinions that deal with those instructions.

*For affirmance and concurrence in the opinion of Mr. Justice Depue*—THE CHANCELLOR, COLLINS, DEPUE, LIPPINCOTT, ADAMS, BOGERT, NIXON, VREDENBURGH. 8.

*For affirmance on the grounds stated by the Chief Justice*—THE CHIEF JUSTICE, GUMMERE, HENDRICKSON. 3.

*For affirmance on the grounds stated by Mr. Justice Dixon*—DIXON, LUDLOW. 2.

*For affirmance on the grounds stated by Mr. Justice Garrison*—GARRISON. 1.

*For reversal*—None.