THE SOUTHERN KANSAS RAILWAY COMPANY, *a Corpora-tion,* AND THE ATCHISON, TOPEKA & SANTA FE RAIL-WAY COMPANY, *a Corporation* v. THE CITY OF OKLA-HOMA CITY, OKLAHOMA COUNTY, TERRITORY OF OKLA-HOMA; J. P. ALLEN, *Mayor of said City;* J. M. Mc-CULLOUGH, W. J. PETTEE, W. H. HUDDLESON, JOSEPH GUERSON, JOSEPH HAZEN, K. M. DAWSON, J. L. WIL-KINS, AND G. W. R. CHINN, *Councilmen of said City,* AND FRANK COCHRAN, *City · Marshal of said City,* AND W. J. GARRETT, *Street Commissioner of said City.*

(Filed July 18, 1902.)

1. **PRIVATE PROPERTY**—Term Defined—When Appropriated for Public Use, Owner Entitled to Just Compensation. Article 5 of the amendment to the Constitution of the United States provides that: "Nor shall private property be taken for public use without just compensation." "Property" within the meaning of this constitution-al provision, includes not only real estate held in fee, but also easements, personal property, and every valuable interest which can be enjoyed and recognized as property; and if it is proposed to be appropriated for the public use in such a manner as to deprive the owner of the beneficial enjoyments thereof, or where such appro-priation would cause serious impairment or deprivation of such property, then such deprivation would be an appropriation to "public use" and the owner is entitled to just compensation.

2. **RIGHT OF EMINENT DOMAIN**—How Exercised. Whenever it is proposed to appropriate private property for a public use, provision must be made for "just compensation" to the party proposed to be injured, and it must be made by "due process of law," and if the statute of the territory makes provision for the appropriation of such property or the making of compensation therefor, the meth-od of appropriation of such property provided for in the statutes must be pursued.

3. **PUBLIC DOMAIN**—Act of Congress Granting Right of Way Upheld. The right to occupy and use the lands occupied by the plaintiff com-pany is derived from an act of congress of July 4, 1884, entitled,

Southern Kansas R'y Co. *et al.* v. Oklahoma City.

"An Act to grant a right of way through the Indian Territory to the Southern Kansas Railway company, and for other purposes," and provides: "That the Southern Kansas Railway company, a corporation created under and by virtue of the laws of the State of Kansas, be, and the same is, hereby invested and empowered with the right of locating, constructing, owning, operating and maintaining a railway line through the Indian Territory, with the right to construct, use and maintain such tracks, turnouts and sidings as such company may deem it to their interests to construct along and upon the right of way and depot grounds hereby granted. Section 2—That a right of way one hundred feet in width through said Indian Territory is hereby granted for said main line and branch of the Southern Kansas Railway company, and a strip of land two hundred feet in width, with a length of three thousand feet, in addition to the right of way, is granted for stations for every ten miles of road. * * * *" Pursuant to this, ground turnouts and sidings have been constucted upon the right of way outside of the depot and station grounds especially provided for, together with such switching posts and other mechanical facilities as are necessary for the operation of the main tracks, turnouts and sidings. The plaintiff company is invested with the right and authorized to construct such turnouts and sidings upon the right of way throughout the Indian Territory, as well as upon such grounds as have been specially granted for the purpose of stations and depot grounds.

4. PROPERTY—What Constitutes. These turnouts and sidings, together with the switches and other mechanical appliances for their necessary operation, constructed under and by virtue of the grant of authority in the act of congress, having required the expenditure of money, constitute property.

5. RIGHT OF WAY—Beneficiary Bound by Conditions Imposed by Act of Congress Granting Charter. The plaintiff in error is bound by the conditions and limitations contained in its charter, which it secured from congress. The power authorizing the proper authorities to lay out and extend roads and highways over and across the right of way of said railroad is conferred by section nine of said act, and is a condition coupled with the grant of right of way and the company having accepted said grant subject to such conditions, it is the duty of such company, and it may be required by the proper authorities to open, construct and maintain, at its own expense, any road or highway crossings without condemnation proceedings, and without compensation or claim for damages, whenever the same may be done without destroynig the use of the improvements made by the company for the purposes for which congress granted their right of way. The right of the public to cross the right of way, road beds, tracks, sidings, or other surface improvements, is not so inconsistent with the use granted to the railway company as to entitle the company to compensation or damages; such inconveniences or burdens as are

Southern Kansas R'y Co. *et al.* v. Oklahoma City.

incident to the use of such crossings by the public, the company voluntarily assumes by the acceptance of the grant.

6. HIGHWAY—Term Defined. The term highway is a general name for all kinds of public ways, including county and township roads, and streets and alleys in cities, towns and villages.

7. APPROPRIATION OF PRIVATE PROPERTY—What Constitutes. The trial court specially found that the opening of First street for travel would necessitate the shortening of the side tracks and turnouts, and the rearrangement of all the sidetracks converging into First street. This, then, will, to the extent that the company is required to shorten its side tracks and turnouts, and the rearrangement of the same, be not only a serious impairment, but an actual destruction of such property rights. The use of the crossings for the public street will, therefore, to that extent, be inconsistent with the use to which the railway company has already appropriated its right of way within the terms of the grant, and to such an extent it would be an appropriation of private property for the public use without just compensation, and is forbidden by the Fifth amendment to the federal constitution, and was not contemplated by the conditions imposed in the grant by congress, and is inconsistent therewith.

8. RIGHT OF EMINENT DOMAIN—Condition Precedent. Upon the facts found by the court in this case, the city will not be authorized to open First street, until it has condemned, had appraised and paid for such improvements of the railroad company within said street as it will be found must necessarily be removed, in order to permit the public to use said highway or street crossing, in common and jointly with the railroad company.

9. MEASURE OF DAMAGES—Rule Applied. The measure of damages in such proceedings is the value of the expense of removing such switch stands or other structures above the surface of the tracks as must be removed, and the expense of shortening or lengthening such of the side tracks as will necessarily have to be changed, so as to place the turnouts outside the limits of the traveled portion of such street when opened.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Henry E. Asp*, and *J. R. Cottingham*, for plaintiffs in error.

*John H. Wright*, for defendants in error.

Affirmed in part, reversed in part and remanded.

### STATEMENT OF FACTS.

This proceeding was an injunction in the district court of Oklahoma county, to restrain the defendant from entering upon the right of way of plaintiffs at First street and California avenue in Oklahoma City, and opening the same to public travel, over and across their right of way, station grounds, tracks, switches, platforms and improvements, and to prevent the defendants from tearing up the tracks, platforms and improvements of the plaintiffs at those streets. The plaintiffs averred that the defandant city was threatening to enter upon and remove the structures and property of the plaintiffs from their right of way and to extend the proposed streets across it without having taken any proceedings to condemn or make any compensation to the plaintiffs therefor, and that the opening of the streets as proposed would greatly impede the transaction of the plaintiff's business, and cause great and irreparable injury to plaintiff's property.

The plaintiff's railroad was constructed and the right of way and station grounds acquired under an act of congress of July 4, 1884, (23, U. S. Stats. at Large, 73) before the opening of Oklahoma to settlement. Its right of way and station grounds were located upon the east side of the southwest quarter of sec. 34, twp. 12, N. R. 3 W. I. M.

After the plaintiff had built its line and occupied its station grounds at the point in question, the territory was opened for settlement and the townsite of the defendant city was surveyed, platted and entered as a townsite. In platting and surveying the townsite only that portion of the southeast quar-

ter of section 33 lying west of the west line of the right of way and station grounds of the plaintiff was platted.

By an act of congress of August 8, 1894, the southwest quarter of section 34, lying on the east side of the railway tracks and station grounds of the plaintiff, was donated, and was immediately thereafter platted as an addition to the defendant city. On January 22, 1893, and December 1, 1893, ordinances were passed by the city council of Oklahoma City, for the opening of First street and California avenue, respectively, and on May 23, 1898, the mayor and city council passed a resolution that First street and California avenue be opened over the plaintiff's tracks and right of way.

No proceedings were ever taken to ascertain the injury to the plaintiff's property, by reason of the opening of such streets, or to ascertain what compensation was due to the plaintiffs on account thereof.

The Choctaw, Oklahoma & Gulf railroad company constructed its raliroad over and across the track of the plaintiffs at the point where the alley between First and Second streets prolonged east would cross the same, on or about the month of May, 1891. And at the time made an agreement in writing for said crossing by which said agreement plaintiffs were entitled to have constructed at said crossing an interlocking plant and system, and afterwards plaintiffs brought suit against the Choctaw, Oklahoma & Gulf railroad company for a specific performance of that contract, which ripened into a decree August 1, 1898, and such interlocking plant and system was immediately constructed, which suit was brought long before the commencement of this action.

This cause was heard upon oral testimony, and an agreed

statement of facts, by which it was agreed that the court should take judicial notice of the act of congress of July 4, 1884. (23 U. S. Stats. at Large, 73.)

It appears in the evidence that the streets of the defendant city which run east and west and intersecting the railroad line right of way and station of the plaintiff companies, are, beginning north of said station and lying successively parallel to each other, are, north and south, as follows: Fourth street, Third street, Second street, First street, Main street, Grand avenue, California street and Reno street; and that the street of said city which runs from north to south one block west of said railway line and station grounds is Broadway; and that the station grounds of said railway companies begin at a point eighty feet south of First street, and the intersection thereof with the said railway lines, and runs southward beyond Reno street. That the depot building and platform for the accommodation of passenger traffic of said railway companies is built within said station grounds, and between Grand avenue on the north and California avenue on the south, provided the said streets were extended across the said station grounds, and that said California avenue would, if extended as proposed by said city, cross said railway lines, cause the removal of a large part of the platform of said station grounds, and would pass within a few feet of the building thereof.

Special findings of fact were prepared and submitted by the plaintiffs which were refused, and the court thereupon made special findings of fact of its own, a part of which are as follows:

"1. That the right of way and tracks of the Southern Kansas railway company and the Atchison, Topeka & Santa

ꟼe railway company run north and south through the city of Oklahoma City, as shown by plat introduced in evidence and marked 'Exhibit C;' that the switch yards of said railway companies extend from a point south of California avenue to a point south on First street, as shown by said plat, 'Exhibit C'; that at and prior to the commencement of this action the said railway company had one switch stand in said street which operated three tracks; that since the commencement of this suit the interlocking system and other improvements have been placed across said First street; that on First street east of the right of way of the plaintiff is located the freight depot of the Choctaw, Oklahoma & Gulf railroad company, besides an elevator and some other small institutions; that west of said plaintiff's right of way on said First street are located several business houses; that First street runs east and west at right angles with plaintiff's right of way, and that second street is the first street north of First street, running parallel with First street, and that on Second street there is a crossing over plaintiff's right of way; that Main street is the first street south, running parallel with said First street, and that there is a crossing over the plaintiff's right of way on said street; that there is also crossings over plaintiff's right of way on Grand avenue and also Reno avenue, the second and fourth streets south of First street, as shown by 'Exhibit C'; that First street by reason of the lay of the ground and the condition of the tracks of the plaintiff's right of way, is the most convenient street to travel in going from any business house on First street or any of the streets on Broadway or west of Broadway street; (Broadway is the first street running north and south west of plaintiff's right of way as shown by 'Exhibit C'); that Main street, Grand avenue and Second street, nor neither of them are taxed to their fullest capacity to accommodate the travel over them, and that the crossing over the plaintiff's right of way on each of said streets is not to the full width of the respective streets; that all persons located on First street west of plaintiff's right of way and west of Broad-

way street, in order to travel from any point within such limits to the Choctaw freight depot, have to go west to Broadway street, south to Main street, east to Oklahoma avenue and north to the Choctaw freight depot; that the Choctaw, Oklahoma & Gulf main track and switches run east and west in said defendant city, along the alley between Second street and First street, crossing the plaintiff's right of way in said alley; that Oklahoma avenue is not open for travel across the right of way of the Choctaw, Oklahoma & Gulf railroad company, and that the freight depot of the said Chowtaw, Oklahoma & Gulf railroad company in on the south side of its tracks; that there is considerable elevation in going from the plaintiff's passenger depot, located near California avenue and going north to a point above Third and Fourth streets; that this elevation is of considerable advantage to the plaintiff companies in switching cars; that by reason of this advantage, practically all the switching is done from the north end of its yards; that the Choctaw, Oklahoma & Gulf railroad was built long after the construction of plaintiff's tracks; that the Choctaw, Oklahoma & Gulf railroad and the plaintiff's are competitive lines; that there is an increasing demand for the opening up of First street by reason of the increase of business industries on First street west of plaintiff's right of way; that since the commencement of this suit the interlocking system has been placed asross First street, but that the contract between the plaintiff corporation and the Choctaw, Oklahoma & Gulf railroad company for its erection was made prior to the commencement of this suit, but that no work had been preformed looking to the construction of such system until after the suit was commenced; that that part of the interlocking system extending across First street will be operated with more difficulty if the machinery now located in First street were moved further south; that said interlocking system greatly diminishes the probability of a collision between the trains of the respective railway companies crossing the tracks of the others.*   *   *   If said First street were opened to public travel, it would necessitate the changing of a part

of the machinery of the interlocking system now located on First street, to a point either north or south of said First street.

"2. The court further finds that if said First street is opened up for public travel, it would necessitate the shortening of the side-track and turn-outs, and the rearrangement of all the tracks converging into First street. The agreed stipulation filed in this case on November 10, 1898, is hereby referred to and made a part of the findings of fact of the court.

"3. The court further finds that the street proposed to be opened up across the right of way of the plaintiff corporation on California avenue is not necessary for the accommodation of public travel; that the opening up of said street would greatly impair the convenient operation of the plaintiff company's business; that if said California avenue were opened up for travel and the ordinances of said city with reference to permitting trains to stand upon said street crossings were enforced, it would be necessary for practically all the trains to be cut in two, while remaining at the station at Oklahoma City; that the depot platform of said plaintiff company extends across California avenue, and did extend across said street at and prior to the commencement of this suit; that the piece of ground located on California avenue which is proposed to be opened up to travel crosses the depot grounds and switch yards of the plaintiff corporation, and that the benefit of opening up said street would be small to the public, but greatly damage the plaintiff, and that the court finds the general issues herein for the plaintiff, in so far as they relate to California avenue, except in so far as such finding is modified by the special finding above set out, and further finds the issues herein for the defendant, in so far as they relate to First street, except in so far as they are modified by the special findings above.

"5. The court further finds that all persons located

north of Main street and west of the plaintiff's right of way have to go south to Main street, east to Oklahoma avenue, and north on Oklahoma avenue, to go to the Choctaw, Oklahoma & Gulf freight depot, and that at least one-half of the population of said city lives north of Main street.

"6. The court further finds that the plaintiff corporation has no title to the parcel of land on First street sought to be opened up, except the right of way for main line as ceded them by congress, the north end of their switching yards and depot grounds being south of the south side of First street.

\* \* \* \* \* \* \* \* \* \* \* \*

"8. The court further finds that the opening up of First street across the plaintiff's right of way is necessary to accommodate the public travel, and for the transfer of freight to and from points east of plaintiff's right of way to and from points west of the same, and north of Main street."

The north end of the land taken under the act of congress for station grounds, is from fifty to seventy-five feet south of the south side of First street, but the tracks in First street diverge from First street down to said grounds taken for station grounds.

The court rendered judgment in the case dissolving the temporary injunction as to First street, and making the same perpetual as to California avenue. Both plaintiffs and defendants assigned error and appealed; the defendants assigning as error that the injunction should have been dissolved as to California avenue, and the plaintiffs assigning as error that the temporary injunction was dissolved as to First street.

Opinion of the court by

HAINER J.: The Fifth article of the amendment to the

constitution of the United States ordains among other things, that:

"No person shall be deprived of life, liberty or property without due process of law; nor shall private property be taken for public use without just compensation."

Section 37, article 3, chapter 14, Statutes of Oklahoma of 1893, provides that:

"Private property may be taken for public use, or for the purpose of giving the right of way, or other privileges, to any railway company, * * * or for any other necessary purpose; but in every case, the city shall make the person or persons, whose property shall be taken, or injured therby, adequate compensation thenefor, to be determined by the assessment of five disinterested householders of the city who shall be selected and compensated as may be prescribed by ordinance, and who shall in the discharge of their duties act under oath * * * and in determining the same, said householders shall consider the benefit resulting to, as well as the damages sustained by, the owner of the property so taken. * * * * "

Section 1 of the act of congress approved July 4, 1884, (23 U. S. Stats at Large 73,) provides:

"That the Southern Kansas railway company, a corporation created under and by virtue of the laws of the state of Kansas, be, and the same is hereby, invested and empowered with the right of locating, constructing, owning, equipping, operating, using, and maintaining a railway and telegraph and telephone line through the Indian Territory, beginning at a point on the northern line of said territory where an extension of the Southern Kansas railway from Winfield in a southerly direction would strike said line, running thence south in the direction of Dennison, in the state of Texas, on the most practicable route, to a point at or near where the

Washita river empties into the Red river, with a branch constructed from a point at or near where said main line crosses the northern line of said territory, westwardly along or near the northern line of said territory, to a point at or near where Medicine Lodge creek crosses the northern line of said territory, and from that point in a southwesterly direction, crossing Beaver creek at or near Camp Supply, and reaching the west line of said Indian Territory at or near where Wolf creek crosses the same, with the right to construct, use and maintain such tracks, turnouts and sidings as said company may deem it to their interest to construct along and upon their right of way and depot grounds hereby granted."

Section 2 of said act contains the following provision:

"That a right of way one hundred feet in width through said Indian Territory is hereby granted for said main line and branch to the Southern Kansas railway company, and a strip of land two hundred feet in width with a length of three thousand feet in addition to right of way is granted for stations for every ten miles of road, no portion of which shall be sold or leased by the company, with the right to use such additional ground where there are heavy cuts or fills as may be necessary for the construction and maintenance of the roadbed not exceeding one hundred feet in width on each side of said right of way, or so much thereof, as may be included in said cut or fill; Provided: That no more than said addition of land shall be taken for any one station.     *     *     *     "

Section 9 of said act reads as follows:·

"That said railway company shall build at least one hundred miles of its railway in said territory within three years after the passage of this act, or this grant shall be forfeited as to that portion not built; that said railroad company shall construct and maintain continually all road and highway crossings, and necessary bridges, over said railway wherever said roads and highways do now or may hereafter cross said

railway's right of way, or may be by the proper authorities laid out across the same."

It will thus be seen that the railway company accepted the charter from the federal government subject to the limitations expressly contained in section 9 of said act above quoted. The acceptance by the railroad company of this charter and the subsequent location, construction and operation of the railroad, in accordance with the grant, constitutes an irrevocable contract, which cannot be modified or impaired. And the railroad company having accepted such charter is bound by all the conditions and limitations contained therein. The power for the proper authorities to lay out and extend roads and highways over and across the right of way of said railroad is expressly conferred by section 9 of said act. But it is contended by the plaintiffs in error that the language of this provision in the charter does not include streets in cities and towns. We do not think so. We think that the term "roads and highways" as used in said act includes streets. It would indeed be a narrow and unreasonable construction to be placed upon the language of said act to hold that "roads and highways" do not include streets in cities, towns and villages. Judge Elliott, in his work on Roads and Streets, page 1, in defining what constitutes a highway, uses the following language:

"The term 'highway' is a generic name for all kinds of public ways, including county and township roads, streets and alleys, turnpikes and plank roads, railroads and tramways, bridges and ferries, canals and navigable rivers. In short, every public thoroughfare is a highway."

And on page 12 the same author says:

"A street is a road or public way in a city, town or village."

We think that section 9 of the act above quoted imposes a condition upon the general grant, and the railway company accepted its grant subject to such conditions, and it is the duty of such company and it may be required by the proper authorities to open, construct and maintain, at its own expense, any highway or street crossings without condemnation proceedings, and without compensation or claims for damages whenever the same may be done without destroying or materially impairing the use for which congress granted their right of way. The right of the public to cross over the right of way, roadbed, tracks, sidings or other surface improvements, is not so inconsistent with the use granted to the railway company at points beyond the station limits, as to entitle the company to compensation or damages; such inconveniences or burdens as are incident to the use of such crossings by the public, the company voluntarily assumed by the acceptance of the grant, and with the express condition and limitation imposed by section 9 of said act. In this connection it must be remembered that the right of way in question was granted across the public domain prior to the opening of public lands in Oklahoma to settlement or occupancy by white persons. The exclusive disposal of such land was in the congress of the United States, and congress had the undoubted power to impose any conditions or limitations upon any rights or privileges conferred upon any person or corporation, to the use of any portion of such public domain. It appears that congress in its wisdom, foreseeing the opening of this country to settlement, and the necessity for roads, highways, streets and bridges across and over any railroad that might be constructed on the proposed grant of right of way, wisely made provision for the benefit of the public, and imposed this reasonable con-

dition and limitation upon the railway company, and the railway company in accepting its grant, became thereby bound by such conditions and limitations, and it is forever precluded from saying that the use of its roadbed, tracks and sidings, for a public highway or street crossing, is the taking of its property for public uses without just compensation. But, in our judgment the provision of the act of congress defining and imposing such conditions must be construed in connection with the purpose of the general grant, and these provisions must be interpreted with reference to the fundamental and paramount rights of eminent domain and due process of law.

The grant of the railway company is contained in sections one and two, and by transposing and bringing the same together will read as follows:

"That a right of way one hundred feet in width through said Indian Territory is hereby granted for said main line and branch to the Southern Kansas railway company, and a strip of land two hundred feet in width and length of three thousnd feet in addition to right of way is granted for stations for every ten miles of road, with the right to construct, use and maintain such tracks, turnouts and sidings as said railway company may deem it to their interest to construct along and upon the right of way and depot grounds hereby granted."

It will thus be seen that congress makes an express distinction between the "right of way" and the "depot grounds" and gives the railway company the right to "construct, use and maintain such tracks, turnouts and sidings, as said company deem it to their interest to construct along and upon the right of way." Pursuant to this grant the company had the unquestioned right not only to construct its main tracks, but to construct and maintain such turnouts and sidings

at any point on its right of way, that it might deem expedient or to its best interests. And in order for the proper and ordinary operation and use of its turnouts, sidings and switches it had the right to construct and erect, on such right of way, such switch stands, posts and other mechanical appliances as were necessary for a safe and convenient operation of the turnouts and sidings.

In imposing the condition that the railway company shall open, construct and maintain all necessary road and highway crossings, we do not think that congress intended that any of the company's property constructed and erected for its use and within the terms of the grant, should be so appropriated by such crossings as to destroy its use, or materially impair its use, for railway purposes, without just compensation. A crossing may be constructed and maintained across a railway right of way and over and across its roadbed, tracks and sidings without destroying the use of the property, or materially impairing its use for railway purposes. It is true that the opening of a street and extending a crossing over a railway company's right of way, may result in inconvenience to the railway company as well as the public; it may occasion delays; it may require additional expenses to maintain gates and flagmen; and it may be difficult to construct approaches, grades and guards, and yet the company cannot complain of any of these inconveniences or incidental expenses which may result therefrom because the company accepted the grant subject to such conditions. And hence its grant is burdened with these essential requirements, which are in the nature of police regulations, when the proper public authorities deem it necessary to lay out a public road, highway or street across the right of way, and those burdens must be borne without ad-

7—Vol 12

ditional compensation. In our opinion such uses by the public are not inconsistent with the prior uses granted the railway company and the company and the public must enjoy the rights and privileges, and as a consequence must bear the additional expenses, burdens and inconveniences resulting therefrom.

This, then, is the general rule, but we think this general rule has a clear and well defined limitation which must be applied to the case at bar. This rule does not apply where the property of the company, which was properly constructed within the terms of its grant, for the operation of its tracks and sidings, will, by the laying out and extending of the street across such right of way, be destroyed or materially impaired, and thereby be required to be removed, and its use abandoned. We have already shown that the company had the right, by the express terms of its grant, to lay the sidings and turnouts at the point where the city purposes to open First street, and if necessary to operate such sidings and turnouts. It had the right to erect switch stands, and the necessary mechanism for operating the switches. The trial court specifically found that the opening of First street for travel will necessitate the shortening of the side tracks and turnouts and the rearrangement of all the side tracks converging into First street. This, then, will, to the extent that the company is required to shorten its side-tracks and turnouts and the rearrangement of the same, be not only a material impairment, but an actual destruction of its property rights. The use of the crossing for a public street, will, therefore, to that extent, be inconsistent with the use to which the railway company has appropriated its right of way within the terms of the grant, and to such extent

we think, it is an appropriation of private property for public use without just compensation, and is, therefore, forbidden by the Fifth amendment to the federal constitution, and was not contemplated by the conditions imposed in the grant, and is inconsistent therewith.

It is true that the fee in the right of way and depot grounds remained, at the time of the passage of the act of congress in question, in the federal government. But it is also true that, for all the purposes specified in the act, the right of the user had been transferred to the plaintiff company, and that this right of user included the authority to locate its property upon the land in question now proposed to be appropriated as a street, and that the plaintiff company was completely invested with the right of fixing thereon, if it deemed it to its interest to do so, its "turnouts and sidings." These "turnouts and sidings" located under and by virtue of this grant of authority, required the expenditure of money, and they constitute property.

In the *Old Colony R. R. Co. v. Plymouth,* 80 Mass. Rep. 161, it was said by Chief Justice Shaw:

"Nor is it in our judgment material whether the property thus taken or appropriated is real estate held in fee, or an easement or lien upon real estate, or personal property. The word "property" in the tenth article of the bill of rights, which provides that 'whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor,' should have such a liberal construction as to include every valuable interest which can be enjoyed as property and recognized as such.

"Nor is it material whether the property is removed from the possession of the owner, or in any respect changes

hands; if it is of such a character and so situated that the exercise of the public use of it, as warranted by the legislature, does, in its necessary natural consequences, affect the property by taking it from the owner or depriving him of the possession of some beneficial enjoyment of it, then it is 'appropriated' to public use by competent authority, and the owner is entitled to compensation."

And it was said in Pierce on Railroads, page 193, that "the laying out of a highway across land of a railroad company which is used for a station, or for other purposes than a right of way, is a taking of its property entitling it to compensation. (*Albany Northern R. Co. v. Bronnell,* 24 N. Y. 345; *Phil. & B. R. Co. v. Philadelphia,* 9 Phil. 563  *  * ) The state, in authorizing the crossing, simply regulates and adjusts private rights with reference to public interests, and exercises its reserved police power. The crossing should be laid out in a manner to cause as little injury as possible to the previous use, and the railroad company is entitled to compensation where the crossing is constructed as to result in serious inconvenience. (*Northern Cent. R. Co. v. Baltimore,* 46 Md. 425; *Chicago & N. W. R. Co. v. Chicago & P. R. Co.* 6 Bliss, 219.")

It is said in *K. C. Railway Co. v. Allen,* 22 Kansas, 285, that "a railroad company's right of way is property, an estate in land, the dominant estate, and that it secures to the railroad company the exclusive right to the occupancy, use and control of the property as against all persons except the owner of the fee; and the paramount right to such occupancy, use and control even as against him."

And in *Kansas Central Railroad Company v. Commissioners of Jackson county,* 45 Kan. 716, that:

"But where any real or substantial loss is suffered, or

damages sustained, the railroad company may have adequate compensation."

And it was said by the supreme court of Missouri in *St. Louis, and S. F. R. R. Co. v. Gordon,* 57 S. W. Rep. 742, that, "A street or road cannot be established across a railroad's right of way except by proper condemnation proceedings in court, and by due process of law, awarding and paying the company just compensation, and an order of a village board opening a street across such right of way is void," and that "it is immaterial whether the defendant owns the fee to its right of way, or has only an easement thereto * * It is property which cannot be taken away from it without just compensation, and the board of trustees have no power or jurisdiction to determine what that compensation shall be, much less to take the property for street purposes without compensation and by simple order."

The expense of removing the switch stands, shortening the side tracks and rearranging the tracks at such a point so as to make it possible to construct and maintain a street crossing over the right of way and tracks, is a proper element of damages, and for such expense the company is entitled to just compensation.

In this case the city does not propose to take the land granted to the railroad company for a right of way. It is not proposed to prevent the railroad company from using it and maintaining its tracks, and any other improvements thereon that are not entirely inconsistent with its use as a highway crossing, and its use for all the purposes for which it is held by the company, will be interfered with only so far as its exclusive enjoyment for railroad purposes is interfered with,

and such use for the purposes of a street being exercised jointly with the use by the company for railroad purposes. The rule as to compensation is necessarily not the same as where the land is taken or its exclusive use appropriated, or where the owner is under no obligation to open, construct and maintain the street, when ordered open. The railroad company being required to open, construct and maintain street crossings whenever required to do so by the competent authority, by the terms of its grant, it is only entitled to compensation for such of its property, the use of which cannot be exercised jointly for the purposes of a street, together, with the reasonable expense of readjusting its sidings and tracks so as to permit a street crossing at said point. The requirement that the company shall construct and maintain the highway and street crossings and the approaches within its right of way, is nothing more than a police regulation. And it is proper that the portion of the street or highway which is within the limits of the railroad should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road.

The rule that the expense of complying with a police regulation is not an element of damages in a condemnation proceeding, has been expressly declared by the supreme court of the United States in the case of *Chicago, Burlington & Quincy R. R. Co. v. City of Chicago,* 166 U. S. 266, where this subject was discussed in an able and exhaustive manner.

Mr. Justice Harlan, in discussing this question, said:

"It is next contended that error of law was committed by the refusal of the court to allow the company to prove that in the event of the opening of the street it would be necessary, in order that the railroad be properly and safely operated, to

construct gates and a tower for operating them, plank the crossing, fill between the rails, put in an extra rail, and to incur an annual expense of depreciations, maintenance and employment of gatemen, etc. It was not claimed that the railroad company could recover specifically on account of such expenditures, but that the proof of their being made necessary by the opening of the street was admissible for the purpose of showing the compensation due to the company. There are some authorities that seem to support the view taken by the railroad company, but we are of opinion that no error was committed in excluding the evidence offered.

"The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people. In the recent case of *New York & N. E. R. Co. v. Bristol,* 151 U. S. 556, 567, this court declared it to be thoroughly established that the inhibitions of the constitution of the United States upon the impairment of the obligation of contracts or the deprivation of property without due process or

of the equal protection of the laws, by the states, are not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. 'The governmental power of self-protection' the court said, 'cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulation in particulars essential to the preservation of the community from injury.' (See *New Orleans Gas Light Co. v. Louisiana Light & H. P. & Mfg. Co.,* 115 U. S. 650, 671.)

"In *Toledo P. & W. R. Co. v. Deacon,* 63 Ill. 91, the supreme court of Illinois said: 'The state has reserved to itself the power to enact all police laws necessary and proper to secure and protect the life and property of the citizen. Prominent among the rights reserved, and which must inhere in the state, is the power to regulate the approaches to and the crossing of public highways, and the passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains. The exercise of their franchises by corporations must yield to the public exigencies and the safety of the community.' And in *Illinois C. R. Co. v. Willenborg,* 117 Ill. 203, where the question was whether a railroad company could be required to construct a farm crossing over its road years after the road had been built, the court said: 'The point is made, however, that these provisions are not obligatory on this corporation, because they were enacted many years since it received its charter from the state. This is a misapprehension of the law. The regulation in regard to fencing railroad tracks and the construction of farm crossings for the use of adjoining land owners, are police regulations in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built, as well as those to be thereafter constructed. They have reference to the public security, both as to persons and to property. * * * No reason is perceived why, upon the same principle on which a railroad corporation may be

required to fence its track and construct cattle guards, it may not be required also to construct farm crossings.'

"In *Chicago & N. W. R. Co. v. Chicago*, 140 Ill. 309, 317-319, the question was whether in a case where a city institutes a condemnation proceeding to open or extend a street across a railroad already constructed, the company owning such railroad was entitled to be allowed, as a part of its just compensation, the amount of its expenses in constructing and maintaining the street crossing. In that case it appeared that the railroad was constructed prior to the above act of 1872 for the incorporation of cities and villages, and before the passage of the act of 1874, which required that thereafter at all railroad crossings of highways 'and streets' the railroad companies should construct and maintain such crossings, and the approaches thereto, with their respective rights of way, so that at all times they should be safe as to persons and property, (2 Starr & Co. Anno. Stat. 1927.) The court said: 'Government owes to its citizens the duty of providing and preserving safe and convenient highways. From this duty results the right of public control over public highways. Railroads are public highways, and in their relations as such to the public are subject to legislative supervision, though the interests of their shareholders are private property. Every railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way * * * If railroads so far as they are public highways are, like other highways, subject to legislative supervision, then railroad companies in their relations to highways and streets which intersect their rights of way are subject to the control of the police power of the state; that power of which the court has said that 'it may be assumed that it is a power co-extensive with self-protection, and is not inaptly termed the law of overruling necessity.' (*Lake View v. Rose Hill Cemetery Asso.* 70 Ill. 191.) The requirement embodied in section eight, that railroad companies shall construct and maintain the highway and street crossings and the approaches

thereto within their respective rights of way, is nothing more than a police regulation. It is proper that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street, and of those riding on the cars    *    *    * The items of expense for which appellant claims compensation are such only as are involved in its compliance with a police regulation of the statute. It is well settled that 'neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare.' (*Chicago and A. R. Co. v. Joliet L. & A. R. Co.,* 105 Ill. 388.) It has been held by this court in a number of cases that railroad corporations may be required to fence their tracks, to put in cattle guards, to place upon their engines a bell, and to do other things for the protection of life and property, although their charters contained no such requirements. (*Galena & C. U. R. Co. v. Loomis,* 13 Ill. 548; *Galena & C. U. R. Co. v. Dill,* 22 Ill. 264; *Ohio & M. R. Co. v. McClelland,* 25 Ill. 140; *Peoria & P. U. R. Co. v. Peoria & R. R. Co.,* 105 Ill. 110    *    * ) Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking or damaging without just compensation of private property, or private property affected with a public interest; (See also *Mugler v. Kansas,* 123 U. S. 623, 668; *Boston & M. R. Co. v. York County Comrs.,* 79 Me. 386; *Thorpe v. Rutland & B. R. Co.,* 27 Vt. 150; *Lake Shore & M. S. R. Co. v. Cincinnati S. & C. R. Co.,* 30 Ohio St. 604; *Portland & R. R. Co. v. Deering,* 78 Me. 61-70; *State v. Chicago B. & Q. R. Co.,* 29 Neb. 412; *New York & N. E. R. Co. v. Waterbury,* 60 Conn. 1; *Charlotte, C. & A. R. Co. v. Gibbes,* 142 U. S. 386-393. )

"We concur in these views. The expenses that will be in-

curred by the railroad company in erecting gates, planking the crossing, and maintaining flagmen, in order that its road may be safely operated,—if all that should be required,—necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken by the company into account when it accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the exercise of the police powers of the state. What was obtained, and all that was obtained, by the condemnation proceedings for the public was the right to open a street across, and within the crossing that was used, and was always likely to be used, for railroad tracks. While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people."

Since the facts as found by the trial court show that the construction of a street crossing at First street, will necessitate a serious impairment or destruction or removal of valuable property of the railroad company, and of a character it had a right to construct under the express terms of its grant, we are of the opinion that in so far as such will be the result, the impairment, removal or destruction of such property without just compensation, constitutes a taking of private property for public uses without just compensation, and is therefore in violation of the rights guaranteed to the company by the constitution of the United States.

For the reasons herein stated the judgment of the district court, so far as it relates to the opening of California avenue, is affirmed; and reversed to that part of the judgment dissolving the temporary injunction as to First street. And the cause is remanded to the district court of Oklahoma county, with directions to render judgment for the plaintiffs in error on the

facts found, and make the injunction perpetual, subject to the right of the defendant in error to open said street, by making just compensation to the railway company, or after proper condemnation proceedings, the defendant in error to pay the costs in this court.

Burwell, J., having presided in the court below, not sitting; Irwin J., and Gillette, J., absent; all the other Justices concurring.