**HOUSTON & T. C. RY. CO. et al. v. CITY OF HOUSTON.**

**No. 7604.**

Court of Civil Appeals of Texas. Austin.

June 24, 1931.

Baker, Botts, Andrews & Wharton and Arterbury & Coolidge, all of Houston, for appellants.

Sam Neathery, City Atty., William D. Orem and Paul D. Page, Jr., all of Houston, for appellee.

BLAIR, J.

Appellee, the city of Houston, instituted this proceeding to condemn a strip of land 40 feet wide and 70 feet long for street purposes across the right of way of appellant Houston & Texas Central Railway Company.

Houston Heights, an addition to appellee, is bounded on the south by appellant's right of way. Heretofore there has been but one thoroughfare, Heights boulevard, to the city proper, by way of Washington avenue. Yale street in Houston Heights runs parallel with Heights boulevard, but heretofore has not extended as far south as appellant's right of way; and appellee sought to open and extend Yale street across appellant's right of way and into Washington avenue. Both parties appealed from an award by the commissioners appointed to assess the damages. A jury trial in the county court resulted in judgment granting appellee a perpetual easement for street purposes across appellant's right of way; but as regards damages the jury answered, "None," to the following special issue submitted: "What sum of money, if any, do you find to be the lessened value, if any, of the right of the defendants to use their railroad tracks over the land described in plaintiff's petition, caused by the opening and use of Yale Street there over?"

Judgment was accordingly rendered that appellant take nothing as damages or consideration for the easement granted appellee; hence this appeal.

It is the contention of appellant that the special issue submitted limited its recovery solely to the "lessened value" of its right of way to use its "tracks," caused by the opening and use of Yale street thereover; whereas, the measure of "compensation generally applied when a public thoroughfare is laid out across a railway right of way is the diminished value for railway purposes of the company's exclusive use of the land taken, caused by its use for street purposes." 24 L. R. A. (N. S.) 1229. And more specifically appellant insists that the value of its right to exclusive use of its entire right of way where Yale street crossed it, lay not alone in the right to use its "tracks," as submitted in the special issue, but that such value lay in its right, as follows:

(1) To build and maintain its sidings and switches where it wished them to be.

(2) To keep its tracks and sidings at whatever grade was best fitted to its purpose.

(3) To be able to operate its trains and conduct its switching operations along its right of way without being hampered by public traffic across same.

(4) To use the land taken for street purposes on which to store cars, rails, cross-ties, and other equipment, or for any uses incident to an unincumbered fee in the premises.

In support of these elements or special items of damages pleaded, appellant offered to prove that a change in grade to place its right of way suitable for the street use would cost $350; that plating the crossing would cost $2,376; that installing electric crossing gates as required would cost $4,000; that it would be put to an increased switching expense of $20,000; and that the necessary remote controls of the crossing would cost appellant $12,000. The trial court excluded this proffered testimony on the ground that the ordinances of the city of Houston required appellant to do these specific things without compensation.

Under the ordinances of the city of Houston, it had the power to direct the opening and placing in condition for street use the portion of the right of way in question, and to compel appellant to do many of the things for which it seeks damages, without any compensation.

Section 266 of the Revised Code of Ordinances of the city of Houston provides as follows: "It is hereby made the duty of all railroad companies and managers thereof owning or controlling steam railroads in the City of Houston, and operating trains thereon, to provide crossings easy of access and suitable for the use of street traffic. Said crossings shall be constructed of vitrified brick, or other permanent paving material, satisfactory to the City Engineer. Said crossings must be so constructed as to be easy of access and reasonably smooth. When brick is used, same must be laid on a five-inch (5) concrete foundation, under the supervision of the City Engineer, and to the satisfaction of the Mayor of said city."

Section 267 provides the time within which railroads must construct crossings after lawful notice to do so.

Section 261 provides as follows: "It shall be the duty of each railway company whose lines of road are constructed, or may be hereafter constructed, within the corporate limits of the City of Houston, to put in good repair and maintain in good condition all streets or parts of streets through or over which its line of road may run, and to keep the same free from obstruction of every kind, which said repairs shall be made and constructed under the direction and supervision of the Street and Bridge Commissioner and City Engineer."

Section 260 provides that railroads must make necessary drainage over or across any street on which their lines are now or may hereafter be constructed, and to furnish all necessary culverts, ditches, waterways, etc.,

necessary, under supervision of the city's engineer.

Section 248 requires railroads to safeguard any street or sidewalk crossed by their track or tracks; and section 250 provides that expenses of safeguarding crossings shall be borne by the railroads.

Sections 239 and 252 provide that railroad companies shall light crossings by proper or electric lights, and provide a penalty for failure to do so.

Section 238 provides that railroad companies shall keep flagmen at all crossings designated by the city.

These ordinances have the effect of statutes and make it the duty of every railroad company operating a railroad within the corporate limits of the city of Houston to place and keep in repair such portions of its right of way as found to be reasonably necessary and convenient for public streets; and no railroad company can demand compensation for doing those things which the ordinances require it to do, such as changing its grade to make it suitable for street purposes, plating the crossing, installing electric lights, or electric crossing gates, and safeguarding the crossing as provided in the ordinances. Nor are these requirements without compensation in violation of the constitutional prohibitions against taking private property for public use without due compensation.

In the case of Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S. 252, 17 S. Ct. 581, 590, 41 L. Ed. 979, the following language is used by Justice Harlan: "The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition, necessarily implied, that their use could be so regulated by competent authority as to insure the public safety. And as all property, whether owned by private persons or by corporations, is held subject to the authority of the state to regulate its use in such manner as not to unnecessarily endanger the lives and the personal safety of the people, it is not a condition of the exercise of that authority that the state shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the constitution, taken for public use, nor is the owner deprived of it without due process of law. The requirement that compensation be made for private property taken for public use imposes no restriction upon the inherent power of the state by reasonable regulations to protect the lives and secure the safety of the people."

This rule was approved in the case of Gulf, C. & S. F. Ry. Co. v. Milam County, 90 Tex. 357, 38 S. W. 747, in which the statute requiring every railroad company to place and keep in repair at its own expense that portion of its right of way embraced in the county road was construed, and in which Judge Brown used the following language:

"In the exercise of its police power, the legislature had the authority to require railroad companies to make and keep in repair the crossings of public county roads over and upon their railroads and their right of way. Railway v. Rowland, 70 Tex. 307, 7 S. W. 718; State v. Railway, 29 Neb. 412, 45 N. W. 469; Railway v. Commissioners, 79 Me. 386, 10 A. 113; Railway v. Deering, 78 Me. 61, 2 A. 670 [57 Am. Rep. 784].

"The law required this railroad company to place and keep in repair that portion of its road and right of way embraced in the county highway at the point of intersection, and, in the discharge of that and other duties imposed upon it by the law, the railroad company might be compelled to do all of the things for which it claimed damages in this case. But it cannot be held, under the statute, that the county must compensate the railroad company for doing those things which the law required it to do, although that duty arose out of the fact that the county highway was laid out across the railroad.

"Counsel for the appellant in this case admits that, after the crossing was once constructed, the railroad company must keep it in repair. The statute says that the railroad company shall 'place' it in a safe condition, and shall keep it in such condition; and this, in the absence of other provisions, necessarily imposes upon it the duty of constructing the crossing in the first instance, as well in those cases where the county road is laid out subsequently to the building of the railroad as in cases where the county road existed before the railroad was constructed."

In the case of Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 413, 84 S. W. 648, 652, 70 L. R. A. 850, Judge Williams quotes with approval the above quotation from Chicago, B. & Q. Ry. Co. v. Chicago, and uses this further language:

"There is some conflict among the authorities as to what a railroad company may be required to do at its own expense in the construction of crossings, but the weight of authority sustains the views expressed by Mr. Justice Harlan, and such is the position of this court. Gulf, C. & S. F. Ry. Co. v. Milam County, 90 Tex. 357, 38 S. W. 747; Gulf, C. & S. F. Ry. Co. v. Rowland, 70 Tex. 303, 7 S. W. 718.

"The conflicting cases have arisen when new streets or other highways were being opened across existing railroads, and the question was as to the extent to which compensation must be made to the railway companies. All of the courts agree that the companies are not entitled to be paid the expense

of doing those things which may properly be required of them by virtue of the police power to secure the safety of persons using the crossings, but differ as to what things are within that category."

■ These authorities clearly dispose of the question that appellant is not entitled to compensation for placing and keeping its right of way in condition for the street crossing, such as making and keeping proper grades, plating crossing, paving same if directed by city, maintaining lights, electric gates, safeguards, and flagmen, if directed by the city so to do, and the making of necessary drainage ditches, etc., because they constitute a reasonable exercise of the police power of the city of Houston, and are constitutional, although enacted after the railroad was built. We therefore pass to the consideration of the alleged increased operating expenses as an element of damages, and which element of damages was not considered by the Supreme Court in either of the cases above cited, but which was considered and held not authorized in Chicago, B. & Q. Ry. Co. v. Chicago, supra. The general rule is stated in 24 L. R. A. (N. S.) 1231, as follows: "The fact that the public will acquire the right to occupy the right of way while crossing it, thereby increasing the company's operating expenses, is too speculative and uncertain to base damages upon, as such inconvenience will be due to the observance of necessary police regulations. Lake Shore & M. S. R. Co. v. Chicago, 148 Ill. 509, 37 N. E. 88; Chicago & N. W. R. Co. v. Chicago, 140 Ill. 309, 29 N. E. 1109; St. Paul, M. & M. R. Co. v. Minneapolis, 35 Minn. 141, 27 N. W. 500; Little Miami & C. & X. R. Co. v. Dayton, 23 Ohio St. 510; Southern Kansas R. Co. v. Oklahoma City, 12 Okl. 82, 69 P. 1050."

And while there is authority to the contrary, we think this rule is in harmony with the reasoning in Gulf, C. & S. F. Ry. Co. v. Milam County, and Houston & T. C. Ry. Co. v. City of Dallas, supra, because the inconveniences and expenses due to increased operations after the opening of the street across the right of way would be largely due to observation of the necessary police regulations, and therefore not compensable.

■ Nor do we think appellant entitled to damages for its claimed right to store "other equipment or for any uses incident to an unencumbered fee" in the portion of the right of way crossed by the street. Damages based upon the possible imaginary or probable future use of its right of way where crossed by the street cannot be allowed appellant. Chicago, B. & Q. Ry. Co. v. Chicago, supra; New York, C. & St. L. R. Co. v. Rhodes, 171 Ind. 521, 86 N. E. 840, 24 L. R. A. (N. S.) 1230.

■ Nor was appellant entitled to compensation for interruption or interference in its switching operations and in having to slow down its trains for the Yale street crossing. These are inconveniences caused by observation of necessary police regulations for the safety of the life and property of the public using the street crossing, and for which no compensation is allowable. Chicago, B. & Q. Railway v. Chicago, supra; New York, C. & St. L. R. Co. v. Rhodes, 171 Ind. 521, 86 N. E. 840, 24 L. R. A. (N. S.) 1231.

■■ But appellant insists that in the exercise of its right of eminent domain the city of Houston was under necessity of making compensation, the measure of which was the diminished value for railway purposes of the exclusive use of its entire right of way, caused by its use for street purposes; and that failure of the jury to find and the court to render judgment for damages under the facts pleaded and proved brings the case within the constitutional inhibition against taking or damaging private property for public use without compensation.

The measure of damages contended for by appellant is in accord with the great weight of authority. New York, C. & St. L. R. Co. v. Rhodes, 171 Ind. 521, 86 N. E. 840, 24 L. R. A. (N. S.) 1229, and cases cited in footnote. Such was the measure of damages approved in Chicago, B. & Q. Railway v. Chicago, supra, which authority both Judge Brown and Judge Williams cited with approval. And we think the court erred in limiting appellant's damages in the special issue submitted to the diminished value of the right of way to use the "tracks," caused by the opening and use of Yale street thereover.

Appellant pleaded and proved that it would be compelled to remove a switch stand from its right of way, where Yale street crossed it, at an expense of $300. It also pleaded and proved that heretofore it had used its right of way where Yale street would cross it as a switching yard, and had used the land between the tracks on which to store cars, rails, cross-ties, and other equipment, which uses it would be deprived of in consequence of the opening and use of Yale street thereover. The charge limiting appellant's recovery to the use of its "tracks" necessarily excluded from the jury either of these elements of damages as pleaded and proved.

It is true, as has been held, that the Legislature, or a municipal corporation under grant of power from the legislature, may authorize the construction of highways or streets across a railroad right of way without making compensation therefor, in the exercise of their police power; and that the loss occasioned is not a taking without due process of law. New York, C. & St. L. R. Co. v. Rhodes, 171 Ind. 521, 86 N. E. 840, 24 L. R. A. (N. S.) 1227, and cases there cited. But it has also been held that such right or power will be strictly construed; and many cases hold that a street may not be laid out

across a railroad right of way used for yard purposes without compensation; and that necessary structural changes in its property will entitle a railway company to compensation therefor. New York, C. & St. L. R. Co. v. Rhodes, 171 Ind. 521, 86 N. E. 840, 24 L. R. A. (N. S.) 1228, and cases there cited. And in the following cases it is held that a railway company is entitled to compensation for the removal of switches and switch stands made necessary by the opening of a street or highway across the right of way: Central R. Co., prosecutor, v. Bayonne, 51 N. J. Law, 428, 17 A. 971; Morris & E. R. Co. v. Orange, 63 N. J. Law, 252, 43 A. 730, 47 A. 363; Southern Kansas R. Co. v. Oklahoma City, 12 Okl. 82, 69 P. 1050.

While the Supreme Court did not discuss, either in Gulf, C. & S. F. Ry. Co. v. Milam County, or Houston & T. C. Ry. Co. v. City of Dallas, supra, the question of the necessity of making compensation where the county or city exercise their right of eminent domain in laying out a highway or street across a railway right of way; still no other conclusion can be reached than that the court intended to so hold where the facts showed damages. In the first case damages were allowed, the court only excluding special damages claimed for things which the statute required the railroad to do without compensation. In the second case Judge Williams specifically noted that "there is no effort to apply the power of eminent domain," and referred to the rule not allowing compensation for those things which the railroads were required to do by virtue of the police power. And while it was further held that the "limitation on the power of eminent domain, that property shall not be taken or damaged for public use without adequate compensation, does not of itself impose any restriction on the proper employment of the police power on any subject lying with its sphere in a proper and lawful manner," still it is clear that the court did not intend to deny compensation for the laying out of a street across a railway right of way where damages resulted and were not within the category of things required of the railway in virtue of the police power regulating same.

It is true that the labor in removing switches and switch stands may not be different from the labor necessary to properly bring the crossing to a grade for street uses, still the structural changes may render the switches and switch stands wholly worthless, and not fitted for any other portion of appellant's right of way. And the damages thus occasioned differ only in degree from damages occasioned by removing a depot or warehouse in order to lay a street or highway across a railroad right of way. And as regards damages arising from the deprivation of the use of the land for storage of cars, rails, etc., courts have universally required strict proof of the amount of such damages and have indulged no indefiniteness nor speculation thereof.

The judgment of the trial court will be reversed, and the cause remanded.

Reversed and remanded.