**The COUNTY OF HARRIS, Appellant,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Appellee.**

**No. 15649.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 30, 1970.

Joe Resweber, County Atty., Jerry B. Schank, Edward J. Landry, Asst. County Attys., Houston, for appellant.

Walter E. Workman, Houston, for appellee; Baker, Botts, Shepherd & Coates, Houston, of counsel.

PEDEN, Justice.

Harris County filed this appeal from the granting of an order temporarily enjoining Harris County and Brown and Root, Inc., jointly and severally, from obstructing, interfering with, entering upon or causing work to be done upon the railroad right of way owned by Southern Pacific Transportation Company at a certain described point. Brown and Root, Inc., has not appealed.

Brown and Root, under a contract with the County, was building a two-lane highway through the County's easement and across the railroad track when this injunction was sought. The County had not instituted condemnation proceedings against the railroad nor obtained its consent to cross its tracks.

The parties stipulated that the railroad has a right of way 100 feet wide which was acquired by condemnation and that the County owns an easement for road purposes 383.12 feet wide across the railroad right of way subject to the railroad's right of way strip. Also that the figures presented by Brown & Root's counsel are reasonable; they show that the minimum additional cost to the County if the work was delayed for more than three weeks would be $10,358.80. It is undisputed that the nearest road crossings of the track are about 8,000 feet to the north and about 10,000 feet south of the place in question.

The County's appeal from the granting of the temporary injunction is based on five points of error. In its first two points it complains that the trial court erred in finding 1) that the County and Brown & Root are presently engaged in work and operations which cause interruptions of service and damage to the operational equipment of the railroad's main line and 2) that the railroad will suffer irreparable injury and loss of the right of use of its property if a temporary injunction is denied, whereas the County and Brown and Root will suffer no irreparable injury, loss or damage by the entry of a temporary injunction.

Harris County's third point of error is that the trial court erred in entering the order granting the injunction without stating in it sufficient reasons for doing so.

Mr. J. H. Lewis, a right of way man for the railroad, testified that the track in

question is Southern Pacific's main line between Houston and Galveston and is traversed by six trains daily. He introduced in evidence several pictures taken the day before the hearing. They clearly show the road work in progress across the railroad's right of way. He identified stabilized shell put within about two and a half feet, or next to the shoulder, of the railroad's ballast section by Brown and Root, and he showed where that company had piled dirt against the rails. He pointed out the imprint in the dirt around the tracks of heavy equipment crossing them and he showed a picture of heavy timbers which had been placed between the tracks to aid in crossing them. He stated that, as shown, the timbers have been split.

He testified that this had been done by the passsing trains and could cause considerable damage to the rails and the trains. The pictures also show large concrete culverts which Brown ·and Root has built on the right of way for road purposes and water impounded there by fill dirt. He testified that the impounded rain water could cause problems with respect to the railroad's fill. He related that the railroad erected barricades to protect its trains and one pole of its important communications line, which pole had been knocked down several times by Brown and Root employees, who had removed the barricades, done new grading and moved dirt. He admitted on cross-examination that the strip in question has been continuously used by the railroad for the operation of its trains and its communication line without interruption.

The attorney for Brown and Root told the court in a preliminary statement that his company will build the road up to the track, place parallel concrete headers next to the track, run fill right up to the headers, put the asphalt on top and it will stop. Brown and Root will lift up one section of the track, put a concrete and shell base underneath the track to give a stable foundation for the track to ride on, but then he did not know who would reset the track; Brown and Root does not do that, but under the contract does lift the track and set the foundation under it. The appellee's counsel then stated that appellee would accept this statement in lieu of proof of these matters. The County's attorney replied that the County "would stipulate to his statements on the amount they will be damaged. I do not feel qualified on the engineering points." We assume that as to the County the trial court considered only the amount of damages.

The attorney representing Harris County stated that he thinks the crossing is going to be at grade. He said it was not complete and is not now being used.

■ In suits for temporary injunctions, the trial judge is endowed with broad discretion to grant or deny the injunction. The scope of review in such cases is limited to the narrow question of whether the action of the trial judge in granting or denying the temporary injunction constitutes a clear abuse of discretion. Janus Films, Inc. v. City of Ft. Worth, 163 Tex. 616, 358 S.W.2d 589 (1962).

■ The purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits. "Status Quo" is the last actual, peaceable, noncontested status which preceded the pending controversy.

■ To warrant the issuance of the writ of temporary injunction, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953).

Article 1, Sec. 17, of the Texas Constitution, Vernon's Ann.St., provides, in part:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent

of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; * * *"

■ We overrule the appellant's first point. Although there was no evidence that the work and operations of the defendants are now causing "interruption of service" to the railroad, there was evidence from which the trial judge was entitled to conclude that "damage to the operational equipment of the plaintiff railroad main line" was being caused and that "interruption of service" was threatened and was likely to be caused unless restrained. It is clear that the County was taking possession of the property and changing its physical character.

■ Similarly, we hold that the evidence which we have noticed supports the trial court's finding that the railroad will suffer both irreparable injury and loss of its right of use of its property if a temporary injunction is denied. There is no evidence that the County will suffer any irreparable injury.

■ An irreparable injury is an injury of such a nature that the injured party cannot be adequately compensated for it in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard. Lowe & Archer, Injunctions and Extraordinary Proceedings 321, Sec. 314; Southwestern Chemical & Gas Corp. v. Southeastern Pipe Line Co., 369 S.W.2d 489 (Tex.Civ.App.1963, no writ); Gulf Oil Corp. v. Walton, 317 S.W. 2d 260 (Tex.Civ.App.1958, no writ) and cases cited.

"Acts which destroy or result in a serious change of property either physically or in the character in which it has been held or enjoyed have been held to do an irreparable injury." 43 C.J.S. Injunctions § 23, p. 448.

"It has been uniformly held in this State that the trial court has the duty to grant temporary injunctions where there is substantial controversy and one party is committing or threatening immediate commission of any act which will destroy the status quo of the property involved before a full hearing can be had on the merits of the case." Gillian v. Day, 181 S.W.2d 327 (Tex.Civ.App.1943, writ dism. as moot, 143 Tex. 56, 182 S.W.2d 687); Carter v. City of Houston, 255 S.W.2d 336 (Tex.Civ.App.1953, no writ); City of Farmersville v. Texas-Louisiana Power Co., 33 S.W.2d 272 (Tex.Civ.App.1930, no writ); Houston Funeral Home v. Boe, 78 S.W.2d 1091 (Tex.Civ.App.1934, no writ).

The trial judge orally expressed apprehension over the danger involved in the defendants' actively engaging in road building across a busy railroad track. The granting of the temporary injunction preserved the status quo.

■ We overrule appellant's third point. The reasons stated in the order for its issuance were sufficient to comply with the requirements of Rule 683, Texas Rules of Civil Procedure.

Appellant's fourth point is that the trial court erred in enjoining the defendants from entering upon or causing any work to be done upon the railroad right of way. Its fifth point is that the trial court abused its discretion in thus enjoining the defendants.

The appellant's first three points go to the question of probable injury, and the remaining two, claiming error and abuse of discretion, go to the question of probable right.

■ We do not agree with the County's position that since the owner of the fee may use it in any way not inconsistent with the rights of the railroad as owner of the right of way (an easement), only the fee owner could convey to the County an easement across the right of way for road purposes, and having obtained such right from the fee owner, the County need not con-

demn an easement across the railroad's right of way.

In the case of Kansas, O. & G. Ry. Co. of Texas v. Grayson County, 5 S.W.2d 542 (Tex.Civ.App.1928, no writ), it was held that to subject the railroad's right of way to use as a public road crossing without the notice, hearing and compensation provided by our eminent domain statutes would be unconstitutional in that it would be in violation of the 14th Amendment to the Federal Constitution and Sec. 17 of Art. 1 of the Texas Constitution.

■ The guaranty of Article 1, Sec. 17, of the Texas Constitution against the taking, damaging or destroying any person's property for public use without adequate compensation applies to property of a railroad corporation as well as to that of individuals. Missouri K. & T. R. Co. of Texas v. Rockwall County Levee Imp. Dist. No. 3, 117 Tex. 34, 297 S.W. 206 (1927).

"Another form of easement which is considered property in the Constitutional sense is the right of way of a railroad company * * * It is well settled that when land in which an easement has been taken by such a corporation is taken for a different public use, the corporation is entitled to compensation." 2 Nichols on Eminent Domain (3rd ed.) 119, § 5.72 [3] (1963).

■ As we have noticed, the County has stipulated that its highway easement is subject to the railroad's right of way. This would seem to be dispositive of any question as to whether the County has the right, absent either condemnation or consent, to interfere with the railroad's reasonable use and enjoyment of its easement.

■ It is well settled that the fee owner could not do so. Gillett v. Van Horne, 36 S.W.2d 305 (Tex.Civ.App.1931, writ dism.); Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453 (1890).

We consider the case of Sinclair Pipe Line Co. v. Archer County, Texas, 147

F.Supp. 650 (N.D.Tex.1956), which is cited by the County, to be distinguishable on the facts: in that case the taker of an easement for road purposes from the fee owner was not required to condemn such easement from the owner of a pipe line easement because the latter did not have a surface easement and there was no reasonable expectation that the owner of one easement would interfere with the rights of the other. The court stated that the fee owners of the land, subject to plaintiff's pipe line right of way, were legally competent to grant a later right of way for a public highway, either overlapping or overlying the plaintiff's pipe line right of way, if such additional use would not unreasonably hinder the rights of plaintiff as owner of its right of way.

Although there is little Texas law directly in point, a number of Texas cases have dealt with the necessity for condemnation proceedings involving public or quasi-public uses. See Houston & T. C. Ry. Co. v. City of Houston, 41 S.W.2d 352 (Tex.Civ.App. 1931, no writ), condemnation of a railroad's right of way by a city for a street; Texas Midland R. R. Co. v. Kaufman County Imp. Dist. No. 1, 175 S.W. 482 (Tex.Civ. App.1915, writ dism.), condemnation of a railroad line for a levee by the District; Texas & N. O. R. Co. v. City of Beaumont, 285 S.W. 944 (Tex.Civ.App.1926, writ ref.), denial of an injunction restraining the City of Beaumont from condemning an easement for a street across the railroad's right of way; Missouri, K. & T. R. Co. v. Rockwall County Levee Imp. Dist. No. 3, supra, condemnation of Railroad right of way by the District and Magnolia Pipe Line Co. v. City of Tyler, 348 S.W.2d 537 (Tex.Civ. App.1961, writ ref.), Tyler was required to condemn pipe line easement to assess damages for lowering pipe line when building a street over the easement.

Injunction has been held to be the proper remedy to halt interference with easement rights. City of Mission v. Popplewell, 156 Tex. 269, 294 S.W.2d 712 (1956).

It was the railroad against whom injunctive relief was sought, but it is noted that in McCammon & Lang Lumber Co. v. Trinity & B. V. R. Co., 104 Tex. 8, 133 S.W. 247 (1911), our Supreme Court held that the owner of an easement may protect his right of possession by injunction from a taking of it without consent and without condemnation proceedings.

Affirmed.